OPINION OF THE COURT
Jones, J.
The regulations governing the formulas and rates of reimbursement by Blue Cross for hospital care and services adopted by the Commissioner of Health on May 28, 1976 (and the individual reimbursement rates thereafter promulgated thereunder) were validly made applicable to all care and services rendered after January 1, 1976. Additionally no warrant has been shown to set aside in particular the specific regulation that imposed a limit on the individual hospital’s base-year expenses (used for computing reimbursement rate) of 100% of the average base-year expenses of all the hospitals in the same grouping. We conclude, however, at variance with the courts below, that no adequate predicate has been shown for the adoption of the regulation directing elimination for reimbursement purposes of 10% of the compensation of interns and residents as attributable to their educational costs. Accordingly, we declare this particular regulation invalid. Finally, we agree that the present proceeding by the petitioning hospitals is not barred by the four-month Statute of Limitations of CPLR 217.
In conformity with the Public Health Law, rates at which hospitals are reimbursed by Blue Cross for services rendered to its subscribers are determined in the following manner. Respondent Commissioner of the Department of Health issues regulations defining the characteristics of reimbursement formulas, two of which must ultimately be implemented — one for the metropolitan New York Blue Cross-Blue Shield Plan (the downstate formula), the other for the remaining seven Blue Cross-Blue Shield Plans in the State (the upstate formula). Based on those regulations (Part 86 of title 10 of the New York Code of Rules and Regulations; 10 NYCRR Part 86), Blue Cross submits proposed reimbursement formulas and individual rate schedules to the Commissioner of Health, who thereafter is required to certify to the Superintendent of *337 Insurance rate schedules which he finds to be reasonably related to the cost of efficient production of hospital services. After the schedules so certified have been approved by the Superintendent of Insurance, each individual hospital is advised of the rate of reimbursement applicable to it.
In early fall, 1975 the Blue Cross Plans submitted to the Commissioner of Health proposed reimbursement formulas for 1976. Conscious of the growing concern over escalating hospital costs and anticipating legislation and revision of the regulations governing reimbursement rates, the commissioner did not certify the formulas submitted but instead notified the Superintendent of Insurance on October 28, 1975 that the calculation of new rates, i.e., for 1976, would have to await the revised regulations and that the 1975 rates would be continued on an interim basis. The hospital industry was notified of this action. On December 4, 1975 the Superintendent of Insurance approved the continued use of the 1975 rates pending promulgation of the final rates for 1976.
New regulations effecting significant changes in reimbursement formulas were thereafter adopted by the commissioner and promulgated by him on May 28, 1976, and on June 1, 1976 he directed the Blue Cross Plans to prepare new reimbursement formulas in accordance with the revised regulations, such formulas to be effective as of January 1, 1976 and to control reimbursement with respect to care and services rendered after that date. After the proposals had been received from the plans, in the fall of 1976 the commissioner certified reimbursement formulas and rates and the Superintendent of Insurance granted his approval in late October and November. Commencing in mid-November individual hospitals were advised of their respective reimbursement rates which would be effective for services rendered on and after January 1 of that year.
On February 25, 1977 petitioners* voluntary hospitals who claim that their 1976 reimbursement rates are lower than the 1975 rates, instituted this article 78 proceeding as a class action on behalf of themselves and all other hospitals similarly situated for a judgment enjoining the Commissioner of the Department of Health, the Superintendent of Insurance and Blue Cross Plans throughout the State from applying the revised Part 86 regulations and the reimbursement rates certified and approved in accordance therewith in fixing reimbursements to hospitals by Blue Cross Plans for services *338 provided in 1976. Following the Appellate Division’s reversal of an order of Special Term which had dismissed the proceeding as barred by the four-month Statute of Limitations of CPLR 217, the matter was remitted to Special Term for further proceedings (60 AD2d 804). Thereafter, petitioners’ motion for partial summary judgment was denied and the petition was dismissed on the merits. That determination was unanimously affirmed by the Appellate Division, which granted leave to appeal to our court. The order of affirmance should be modified.
In addition to attacks on the substantive provisions of the regulations which describe the characteristics of the reimbursement formulas, petitioners assert that the regulations, promulgated in May, 1976, and the resulting formulas and rates, assigned in November, 1976, could not be made retroactive to January 1, 1976, with the result, it is argued, that 1975 reimbursement rates must be regarded as having continued to prevail during 1976. Because this challenge, if successful, would be determinative of the appeal in petitioners’ favor, we turn first to this aspect of the litigation.
For their assault on retroactivity petitioners rely on two statutory provisions (Public Health Law, § 2807, subds 3, 4), two regulations of the Department of Health (10 NYCRR 86-1.15 [a], 86-1.16) and an assertion of a denial of due process. Insofar as reliance is placed on subdivision 3 of section 2807 of the Public Health Law, they point to no language in that subdivision, however, that requires prospective approval of reimbursement rates for the year 1976, given the legislative intent that may be inferred from what transpired at the 1976 legislative session with respect to subdivision 4 of section 2807, the other statutory provision on which they rely.
At the outset it should be observed that the legislative expression with respect to prospectivity is found in subdivision 4 of section 2807 of the Public Health Law and that there have been two subdivisions numbered 4 pertinent to our present considerations.[1] The first of these, which indeed contemplated only prospective rate-fixing, was enacted effective September 1, 1974 by chapter 682 of the Laws of 1974 and directed the Commissioner of Health to notify each hospital of its approved reimbursement rate at least 60 days prior to the *339 "fiscal year” for which the rate was to become effective. However, chapter 76 of the Laws of 1976 provided that this subdivision 4 of section 2807 of the Public Health Law was to be suspended as of November 1, 1975 for the period through March 31, 1977, thus relieving the commissioner of observance of its command at least with respect to 1976 reimbursement rates. The same chapter enacted an alternative subdivision 4, to be effective from March 30, 1976 through March 31, 1977, covering only a portion of the period of suspension of the original subdivision 4 — a portion which commenced well after the calendar year 1976 had begun. This second subdivision 4 required hospital notification of rate approval 60 days prior to the beginning of an "established rate period” for which the rate was to become effective.
The consequence of the foregoing legislative action relative to the two subdivisions 4 of section 2807 of the Public Health Law was that the prior notice requirement (which might be read to foreclose retroactivity) of neither subdivision was applicable to rates for the period beginning January 1, 1976— not the original subdivision 4 because it had been suspended from November 1, 1975 through March 31, 1977 and not the alternative subdivision 4 because, with an effective date of March 30, 1976, it could not impose a 60-day prior notice requirement on rates for an established rate period which period had begun three months before the subdivision went into effect. With no rates having yet been determined for 1976 and 1975 rates having been continued on only an interim basis at the time when chapter 76 of the Laws of 1976 was adopted, the conclusion fairly to be drawn is that the statutory bar to retroactive rate-fixing was intentionally and temporarily raised to permit subsequent promulgation of reimbursement rates based on forthcoming, revised Part 86 regulations to take effect retroactively for the entire year 1976. On this analysis of the applicable statutory provisions, there was no proscription against retrospective rate-fixing for the year 1976. Indeed it appears in the circumstances that the Legislature had acted precisely to permit such retroactivity with respect to 1976.
We turn then to the regulations relied on by petitioners as preclusive of retroactive rate-fixing — regulations 86-1.15 (a) and 86-1.16. The first of these contains an express statement that payment rates shall be established on a prospective basis. Issued in 1970, the year following the legislative amendment *340 of section 2807 of the Public Health Law looking to prospective approval of hospital reimbursement rates embodied in the Cost Control Act of 1969 (L 1969, ch 957), the regulation is properly regarded as directory implementation of the initial statutory intent. So regarded, its failure of application for the 1976 rate period — for which prospective treatment was legislatively suspended as previously discussed — is entirely consistent with the statutory direction with which the administrative regulation must comport. We do not attach determinative significance to the failure of the commissioner to keep his regulations up to date.
Regulation 86-1.16 (no longer extant) by its terms barred retroactive adjustments only with respect to final reimbursement rates. Inasmuch as only interim — not final — rates (those carried over from 1975) had been set and were adjusted in this instance, that regulation had no application.
With respect to petitioners’ claim of infringement of their right to due process by the promulgation in November, 1976 of rates for the preceding months of 1976, it need only be observed that no vested property rights under any particular rates had come into being prior to that time. When notice was given by the Department of Health on October 31, 1975 that only interim rates were then being promulgated for 1976 it was announced that final rates subsequently to be promulgated might reflect “either upward or downward revisions”. Thus, no contract rights were infringed by the retroactive determination of reimbursement rates late in 1976 (cf. Matter of Kaye v Whalen, 44 NY2d 754, 755, mot for rearg den 44 NY2d 949).
Concluding for the reasons stated that petitioners’ challenge to the retroactive establishment of rates must fail, we turn then to the particulars of the governing regulations to which objection is made. First, petitioners attack regulation 86-1.14 (b) which, as revised in June, 1976, initially limited a hospital’s base-year expenses (used for computing reimbursement rate) to a figure no greater than 100% of the average base-year expenses of hospitals that, by reason of similar characteristics, were included in the same group as the subject hospital.[2]
*341 The objective of the Cost Control Act of 1969 (L 1969, ch 957) was to impose effective cost control of rising hospital costs and to restrict reimbursement to that "reasonably related to the costs of efficient production of such service”. (Public Health Law, § 2807, subd 3.) We agree with both courts below that it cannot be concluded that there was not a rational basis for the commissioner’s determination to impose the so-called 100% ceiling in computing basic rates. The statute mandates that "geographical differentials in the elements of cost considered, economic factors in the area in which the hospital or agency is located, the rate of increase or decrease of the economy in the area in which the hospital or agency is located, [and] costs of hospitals or agencies of comparable size” shall be taken into consideration. It cannot be said to be irrational in an effort to contain hospital costs to relate reimbursement computations to the weighted average cost experienced by all the hospitals in the same grouping, in particular to limit allowable base-year expenditures in each hospital to the average base-year expenditures in similar hospitals. The prior tolerance of 10% to 15% above average costs of similar hospitals was deemed to be inherently inflationary, as providing insufficient incentive to cut and to control costs. The abolition of that so-called "plus factor” cannot be held to be irrational. Judicial "review ends when a rational basis is found for the agency determination” (Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269, 277).[3]
The second regulation which draws petitioners’ fire is section 86-1.26 which provided: "Educational activities. The costs of educational activities less tuition and supporting grants shall be included in the calculation of the basic rate *342 provided such activities are directly related to patient care services. In computing allowance costs related to salaries and fringe benefits for interns and residents for purposes of reimbursement during the period January 1, 1976 through March 31, 1977, 10 percent of such costs will be eliminated from rate computations on the basis that this elimination represents the minimum amount properly chargeable to education activities not directly related to patient services.” This regulation is attacked on two grounds, and we agree with petitioners as to the merit of both.
Subdivision 2 of section 2803 of the Public Health Law explicitly provides that the State Hospital Review and Planning Council shall adopt rules and regulations, subject to the approval of the Commissioner of Health, to effectuate the provisions and purposes of article 28 of that statute. The commissioner is empowered to propose rules and regulations and amendments thereto for consideration by the council. Nowhere, however, does the commissioner point to, nor do we find, any authority granted to the commissioner to adopt regulations without action by the council. Such authority is not to be implied from the broad language of section 2800 which, in general terms, vests in the Department of Health "the central, comprehensive responsibility for the development and administration of the state’s policy with respect to hospital and related services”.
Indeed, in response to the commissioner’s request therefor, the Attorney-General advised the commissioner by formal opinion dated October 30, 1975 that "Rules and regulations relative to Medicaid and Blue Cross reimbursement rates in health facilities are to be adopted by the State Hospital Review and Planning Council subject to the approval of the Commissioner of Health”. (1975 Opns Atty Gen 61.) The commissioner himself may be said to have recognized the necessity for council action. We are informed that all other pertinent provisions of the revised regulations of May 28, 1976 received approval of the council; this regulation was twice submitted to the council by the commissioner but on each occasion the council declined to give its approval.[4]
*343 It follows, therefore, that section 86-1.26 of the revised regulations never became legally effective.
In addition, while the statute expressly authorizes the commissioner in determining rate schedules to exclude "those parts of the costs for educational salaries which the commissioner shall determine to be not directly related to hospital service” (§ 2807, subd 3), there is no evidentiary basis in the present record for the choice of 10% as reflecting the portion of such salaries not directly related to hospital services. The commissioner conceded that neither he nor the Department of Health had ever made a study on the basis of which to fix 10% as the proper percentage to be excluded. Absent a predicate in the proof to be found in the record, the unsupported determination by the commissioner must also be set aside as without rational basis and wholly arbitrary. (Matter of Hawley v Cuomo, 46 NY2d 990; cf. Hospital Assn. of N. Y. State v Toia, 473 F Supp 917, 938-940.)
Finally, we reject, as did the Appellate Division, the contentions of the commissioner and the Blue Cross Plans that the four-month Statute of Limitations for article 78 proceedings under CPLR 217 began to run on the promulgation of the revised Part 86 regulations on May 28, 1976. At that date no individual hospital could know whether it would be prejudiced by the provisions of the new regulations. The application of the regulations remained to be made; no one could then predict what the actual reimbursement rates would prove to be. Blue Cross was required to prepare and submit reimbursement formulas, which it did only after consultation with hospital representatives, and those formulas had in turn to be approved by both the Commissioner of Health and the Superintendent of Insurance before they acquired vitality and individual rates could be projected. It would be unreasonable to conclude that the determinations of the Commissioner of Health were binding and final as to the petitioning hospitals before the administrative procedures had been completed, the impact thereof could accurately be assessed, and petitioners could know whether they were aggrieved. (Cf. Matter of Martin v Ronan, 44 NY2d 374; Mundy v Nassau County Civ. Serv. Comm., 44 NY2d 352.)
Accordingly, for the reasons stated, the order of the Appellate Division should be modified, without costs, the judgment of dismissal vacated in part, and the case remitted to Supreme *344 Court for entry of a judgment granting petitioners’ motion for partial summary judgment to the extent of declaring section 86-1.26 of the commissioner’s regulations invalid, and, as so modified, affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler and Fuchsberg concur with Judge Jones.
Order modified, without costs, judgment of dismissal vacated in part, and the matter remitted to Supreme Court, New York County, for entry of a judgment in accordance with the opinion herein and, as so modified, affirmed.

. Presently there are four subdivisions of section 2807 of the Public Health Law numbered 4 set out in Book 44 of McKinney’s Consolidated Laws of New York Annotated and Book 25 of New York Consolidated Laws Service.

. Computation of reimbursement rates for a particular year begins with a determination of actual per diem in-patient costs — divided into routine costs and ancillary costs — for the base year (the year two years prior to the year for which rates are being fixed). The costs so determined are combined for hospitals within the group of *341 similar institutions and an average is arrived at which, when adjusted or trended upward by a factor determined by the Commissioner of Health to compensate for inflation, produces an adjusted average, commonly referred to as the ceiling. For year 1975 reimbursement rate schedules had limited individual hospital’s recoverable costs to figures varying from a 110% ceiling on routine costs alone to a 115% ceiling on combined routine and ancillary costs, depending on whether the hospital was subject to the upstate or downstate formula.

. We note that under section 86-1.17 (subd [a], par [7]) individual hospitals may request relief from the ceiling provisions of subdivision (b) of section 86-1.14. The briefs of the parties have devoted considerable attention to this provision, and extended arguments are addressed to its significance in practice. We do not, however, predicate our rejection of the petitioning hospitals’ challenge to the 86-1.14 (b) ceiling on the availability of this avenue for seeking relief.

. On April 8, 1976 and again on June 17, 1976. The commissioner had also earlier sought, without success, both to obtain legislative enactment of the 10% figure and to abolish the council’s rule-making authority. (Senate-Assembly Bill, §§ 7287, 9257, §§ 6, 10, Jan. 20, 1976.)