First Department, September, 1987

(September 3, 1987)

■ HANOVER INSURANCE COMPANY, Appellant, v JAMES P. CORCORAN, as Superintendent of the New York State Department of Insurance, et al., Respondents.—Order and judgment (one paper) of the Supreme Court, New York County (William P. McCooe, J.), entered on December 29, 1986, which denied petitioner's application pursuant to CPLR article 78 and granted respondents' motion to dismiss the petition on the ground of untimeliness, is modified on the law to the extent of denying respondents' motion to dismiss on the ground of untimeliness, reinstating the petition and remanding the matter for further proceedings, without costs or disbursements.

Petitioner Hanover Insurance Company commenced this petition pursuant to CPLR article 78 seeking review of a

determination issued on April 28, 1986 by the Superintendent of the New York State Department of Insurance, which approved and adopted the findings and conclusions of one of its Hearing Officers and directed Hanover to accept an assignment from the Assigned Risk Plan (Insurance Law § 5301 *et seq.*). In that regard, the Assigned Risk Plan was enacted in order to provide automobile liability and property damage insurance to those applicants who are unable to acquire insurance on the open market. All carriers licensed to write motor vehicle insurance in this State, including petitioner, are required to participate in the Plan, which operates under a set of rules adopted according to certain established procedure. It is one of these rules, section 10 (A) (1), which is the subject of the instant article 78 petition.

The dispute involved herein arises out of an application to the Plan by Frank's School of Transportation Corporation for insurance coverage for 11 school buses. Frank's application requested limits of $5,000,000 per vehicle and indicated that the company falls within the regulatory authority of the Interstate Commerce Commission, which mandates such minimum coverage. After processing the application in its normal manner, the Plan assigned the risk to Hanover. However, Hanover declined the assignment, asserting that it was not compelled by State law to accept such an inordinate risk. The Plan thereafter directed Hanover to provide the necessary coverage, but Hanover advised the Plan that it would not write a policy for more than $250,000/$500,000. At petitioner's request, the matter was then reviewed by the Governing Committee, which unanimously found that since the Interstate Commerce Commission had ordained a $5,000,000 limit, Hanover had to extend coverage at that amount. Petitioner appealed this determination to the Department of Insurance. The Hearing Officer, citing section 10 (A) (1) of the Plan, upheld the decision of the Governing Committee, and the Superintendent of Insurance approved and adopted the findings and conclusions of the Hearing Officer. The present article 78 proceeding ensued.

It is petitioner's contention that respondents' "promulgation, interpretation and application of § 10 (a) (1) are *ultra vires* and beyond the authority granted by § 5303 of the New York Insurance Law." Section 10 of the Assigned Risk Plan states in relevant part:

"A. Each insurer shall be required to write a policy or binder for limits of $10,000/$20,000 bodily injury liability and $5,000 property damage liability except as follows:

"1. When limits in excess of $10,000/$20,000 bodily injury liability and $5,000 property damage liability are required by law, the insurer shall be required to write a policy or binder for limits adequate to comply with the law * * *

"3. At the request of the applicant or insured, the following bodily injury liability and property damage liability limits shall be available under one policy:

"optional B.I. Limits of

"$10,000/$20,000 * * *

"$25,000/$50,000 * * *

"$100,000/$300,000 * * *

"$250,000/$500,000."

Hanover urges that the foregoing rule, in particular that portion of it which declares that that insurer must provide coverage "for limits adequate to comply with the law" whenever the law requires such limits to be in excess of $10,000/ $20,000 for bodily injury liability and $5,000 for property damage liability, is in conflict with section 5303 of the Insurance Law. According to section 5303:

"(a) Any such plan shall provide for availability to applicants of motor vehicle insurance coverages for:

"(1) legal liability, up to fifty thousand dollars because of bodily injury to or death of one person in any one accident and, subject to such limit for one person, up to one hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, and up to ten thousand dollars because of injury to or destruction of property of others in any one accident".

In the view of Hanover, the Assigned Risk Plan may compel an insurance carrier to provide coverage only up to the maximum amount specified in Insurance Law § 5303 (a) (1) and that the $5,000,000 limit far exceeds the coverage authorized by the statute. The Supreme Court, however, never reached this claim, and the record of the present proceeding is rather scanty with respect to the merits of Hanover's petition. Indeed, on appeal, petitioner does not even discuss the merits of its own proceeding and defendants do so only in a perfunctory manner. Rather, the Supreme Court, in dismissing the petition, held it to have been untimely commenced, and the parties have discussed the question of timeliness in far greater depth than they have dealt with the issue of whether section 10 (A) (1) of the Assigned Risk Plan complies with the mandates of the Insurance Law and whether that section was properly construed in this instance.

Although respondents moved to dismiss on a variety of grounds, including the purported insufficiency of the petition and the failure of petitioner to allege that it was aggrieved by the operations of the Plan or that the Plan did not properly apply its rules, the Supreme Court apparently considered only respondents' assertion that the proceeding was untimely and disposed of the matter on that basis. Since we disagree with the court's conclusion that the petition was not timely instituted, and the appellate record relating to the merits of the petition is inadequate, we are directing that the petition be reinstated and remanded for further proceedings.

As for the Supreme Court's decision granting respondents' motion to dismiss, the court recognized that Hanover is not endeavoring to have section 10 (A) (1) of the Assigned Risk Plan invalidated but, rather, seeks judicial review of a specific determination rendered by a specific public official. Nonetheless, the court found that the four-month period of limitations began to run, at the latest, upon the effective date of the 1981 amendment of the rule in question, instead of on April 28, 1986, the date of the administrative decision being challenged, because the order "simply directs Hanover's compliance with the Rule. Clearly, vacating the order is tantamount to voiding the Rule itself * * * [C]ontrary to Hanover's contention, its challenge is in reality a challenge to the Rule as amended in 1981." It is undisputed that the proceeding before us was commenced within four months of the date of the determination of respondent Superintendent of Insurance.

The law is well settled that the four-month period of limitations established by CPLR 217 does not begin to run until there has been a determination which is final and binding upon petitioner and is one by which the petitioner is aggrieved (*Matter of Martin v Ronan*, 44 NY2d 374; *see also, Matter of Edmead v McGuire*, 67 NY2d 714; *Lenihan v City of New York*, 58 NY2d 679). Thus, in *Matter of Martin v Ronan (supra)*, the Court of Appeals rejected the position of respondents therein that the limitation period started to run at the completion of the disputed civil service examination and held, instead, that the relevant date was when the final, revised eligible list was published. Similarly, the court found in *Matter of Edmead v McGuire (supra)*, that the determination of respondent Board of Trustees of the New York City Police Department became final and binding, and, therefore, the four-month limitations period began to run, on the date that petitioner was notified of the Board's decision.

It was certainly error for the Supreme Court to conclude

that petitioner should have possessed the foresight to realize in 1981 that implementation of section 10 (A) (1), which by its words does not mandate that an insurance carrier write a $5,000,000 policy, would one day be construed against Hanover in such a manner as to compel it to assume a risk of that magnitude. The fact is that to require a party to examine all administrative rule making at the time of adoption for the mere possibility that some rule or regulation might one day have a deleterious impact would only encourage unnecessary litigation based upon hypothetical situations which, if they can be anticipated at all, might never occur. Moreover, had petitioner sought to challenge section 10 (A) (1) in 1981, respondents could properly have argued that the matter was not ripe for judicial determination since any alleged harm was remote, indirect and purely contingent on future developments *(Church of St. Paul & St. Andrew v Barwick,* 67 NY2d 510). What respondents are attempting to accomplish, in effect, is to insulate determinations by the Superintendent of Insurance from judicial review; for example, an attempted attack on the rule in question would no doubt have been deemed premature in 1981 and now is alleged to be untimely.

In *Matter of Jewish Mem. Hosp. v Whalen* (47 NY2d 331), a case analogous to the one here, respondent Commissioner of the Department of Health, in conformity with the Public Health Law and with the approval of the Superintendent of Insurance, issued regulations defining the characteristics of certain formulas by which hospitals could be reimbursed by Blue Cross for services rendered to its subscribers. In that connection, the Court of Appeals observed *(supra,* at 343): "Finally, we reject, as did the Appellate Division, the contentions of the commissioner and the Blue Cross Plans that the four-month Statute of Limitations for article 78 proceedings under CPLR 217 began to run on the promulgation of the revised Part 86 regulations on May 28, 1976. At that date no individual hospital could know whether it would be prejudiced by the provisions of the new regulations * * * It would be unreasonable to conclude that the determinations of the Commissioner of Health were binding and final as to the petitioning hospitals before the administrative procedures had been completed, the impact thereof could accurately be assessed, and petitioners could know whether they were aggrieved."

Petitioner asserts that it is not mounting a facial challenge to section 10 (A) (1) and that the rule is capable of being applied lawfully. In addition, as has been pointed out, it is difficult to perceive how Hanover could have anticipated that

the rule might be interpreted adversely to its interests prior to the time that the Superintendent of Insurance actually issued his determination. Consequently, respondents' motion to dismiss the petition should not have been granted on the ground of untimeliness. Concur—Ross, Asch, Milonas and Smith, JJ.

Murphy, P. J., dissents in a memorandum as follows: While I am in full agreement with the majority that the within CPLR article 78 proceeding was timely commenced, I see no reason why this court should not dispose of the straightforward substantive legal issue raised by petitioner. The fact that petitioner on appeal has inexplicably neglected to address the merits of the matter raised in its own petition should not deter us from ruling on the question.

Simply put, petitioner maintains that section 5303 of the Insurance Law (quoted in the majority opinion) sets an upward limit on the amount of coverage an insurer can be required to provide applicants insured as assignments under the Assigned Risk Plan. Section 10 (A) (1) of the Plan, however, provides that "the insurer shall be required to write a policy or binder for limits adequate to comply with the law". Compliance with this latter provision in this case would obligate petitioner to write a policy extending coverage of $5,000,000, an amount considerably in excess of the $50,000/$100,000 limitation petitioner claims is imposed by Insurance Law § 5303. The question then is whether the Superintendent and the Plan have exceeded their authority in requiring that insurer participants in the Plan write policies adequate to comply with the law when the law requires coverage in greater amounts than the $50,000/$100,000 level mentioned in section 5303 of the Insurance Law.

The reading of the subject section of the Insurance Law apparently adopted by respondent is that the Plan must, at a minimum, make provision for assigned-risk applicants to obtain coverage of up to $50,000/$100,000. Read in this fashion the statute does not provide a ceiling upon the coverage which the Plan may require an insurer to extend; it merely assures that the Plan will make available to those insured as assigned risks coverage at a level as high as $50,000/$100,000. This view of the statute's intendment is both in accord with its language and with sound policy. To construe the provision as petitioner urges would logically require invalidation of Plan section 10 (A) (3) (also quoted in the majority opinion), as well as section 10 (A) (1) which is directly at issue in this proceeding. If section 10 (A) (3) were invalidated, assigned-risk in-

sureds would be unable to obtain coverage in amounts above what is today the legal minimum. Clearly, for a group which by hypothesis poses an unusually high risk, such a limitation on coverage would have particularly adverse consequences. Those insured pursuant to the Plan would be frequently underinsured, and injured parties would be deprived of an adequate recovery. There would then seem compelling policy considerations supporting the reading of the statute advanced by respondent permitting the Plan to require participating insurers to write policies in amounts requested by applicants exceeding the $50,000/$100,000 level set forth in Insurance Law § 5303. I see no reason why the Plan, consistent with its interpretation of the statute, would not be permitted to require that insurers make available to applicants policies with limits adequate to comply with the law.

As respondent's construction of its operative statute is in this case plainly reasonable, it is entitled to great weight and should be upheld *(see, Matter of Howard v Wyman,* 28 NY2d 434).

Accordingly, I dissent and would affirm the appealed order but for the reasons stated herein.