18 N.Y.3d 329 (2011)
960 N.E.2d 944
937 N.Y.S.2d 153
2011 NY Slip Op 8997
METROPOLITAN TAXICAB BOARD OF TRADE et al., Appellants,
v.
NEW YORK CITY TAXI & LIMOUSINE COMMISSION et al., Respondents.
No. 222.
Court of Appeals of New York.
Argued November 14, 2011.
Decided December 15, 2011.
*330 Emery Celli Brinckerhoff & Abady LLP, New York City (Richard D. Emery, Matthew D. Brinckerhoff, Elizabeth S. Saylor and Julia Einbond of counsel), for appellants.
Michael A. Cardozo, Corporation Counsel, New York City (Susan Paulson, Francis F. Caputo and Adam Stolorow of counsel), for respondents.
Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

*331 OPINION OF THE COURT
SMITH, J.
Regulations of the New York City Taxi & Limousine Commission limit the rates that may be charged by owners of taxicabs who lease those cabs to drivers. In this case, owners challenge a Commission regulation that prohibits owners from collecting sales tax in addition to the maximum permitted lease rates. We hold that the regulation must be annulled, because the Commission has not shown any rational basis for it.

I
The Commission was created by the New York City Charter to serve a number of purposes, among them "to adopt and establish an overall public transportation policy governing taxi... services" and "to establish certain rates" (NY City Charter § 2300). A more specific Charter provision authorizes the Commission to regulate the "rates of fare" charged to taxicab passengers (NY City Charter § 2304 [b]), but the Commission has also exercised the authority (not challenged in this case) to regulate the rates at which the owners of taxicabs lease them to drivers. A Commission rule (Rules of NY City Taxi & Limousine Commn [35 RCNY] § 1-78 [a]) establishes a "Standard Lease Cap" for each 12-hour shift, ranging from $105 for day shifts to $129 for night shifts on Thursday, Friday and Saturday.
At issue in this case is the Commission's Rule § 1-78 (a) (4), which says:
"No owner ... may charge to or accept from a driver any payment of any kind, such as a tax ..., for the lease of a medallion or of a medallion and a vehicle, other than a lease amount no greater than the applicable Standard Lease Caps ... [with exceptions not relevant here]."
Petitioners, three firms in the business of leasing taxicabs and a trade association of such firms, challenge this regulation only insofar as it prohibits the collection of sales tax in addition to the Standard Lease Cap. Supreme Court upheld *332 the regulation (Metropolitan Taxicab Bd. of Trade v New York City Taxi & Limousine Commn., 27 Misc 3d 254 [Sup Ct, NY County 2009]), and the Appellate Division affirmed (71 AD3d 508 [1st Dept 2010]). We granted leave to appeal, and now reverse.

II
The Commission adopted rule 1-78 (a) (4) in 2009. Until then, for at least 10 years, it had been the general practice for owners whose rates were capped by the Commission to charge sales tax in addition to the Standard Lease Caps. The practice was not concealed: the record shows that rates that exceeded the caps when sales tax was included were contained in rate sheets and displayed on signs.
An affidavit from the head of a taxi drivers' organization, submitted by the Commission, acknowledges that "excluding taxes from lease caps is the predominant practice in the industry." The Commission asserts that the practice was not consistent, but there is no evidence of any real inconsistency: the Commission's evidence shows only that there were times when the total charge to a driver for a particular shift, including sales tax, was equal to or below the Standard Lease Cap. This mayand according to petitioners, doesmean only that, for certain shifts, market conditions did not permit owners to charge as much as they thought the regulations allowed. The Commission points to no example of an owner who charged, for all shifts, an amount equal to or less than the Standard Lease Cap when sales tax was included.
The Commission's decision in 2009 to change the prevailing practice, and make the Standard Lease Caps inclusive of sales tax, was admittedly not based on any economic analysis. Indeed, no information about the owners' costs was before the Commission when the decision was made. Petitioners claim that by adopting the regulation without considering their costs the Commission violated New York City Charter § 2304 (c), which says in relevant part:
"In determining the rates of fare, the commission may consider all facts which in its judgment have a bearing on a proper determination, with due regard among other things ... to the gross revenues derived from operation, to the net return derived from operation, to the expenses of operation including the income of drivers or operators, to the return *333 upon capital actually expended and the necessity of making reservations out of income for surplus and contingencies."
The Commission argues, in substance, that the words "may consider" in the Charter provision imply that whether to consider financial information is discretionary with the Commission, while petitioners argue that the "due regard" language makes consideration of such information mandatory.
We do not resolve the abstract question of what is discretionary or mandatory under the Charter provision. Indeed, the conflict between the parties' interpretations may be more apparent than real. It seems obvious that, if the Commission had before it data showing that a proposed lease rate would not bring the owners a fair return, it would not be free to ignore the data: that would raise constitutional problems, whatever the proper interpretation of the City Charter provision. On the other hand, it seems almost equally obvious that the Commission may leave it up to the firms that it regulates to inform the Commission about their costsand that, where no such information is provided, the Commission may reasonably infer that the rate it is proposing is not confiscatory.
Thus, we would not necessarily fault the Commission for making an adjustment to its Standard Lease Caps without an affirmative showing that taxi owners' revenues and costs justified the adjustment, so long as the owners had had an opportunity to submit evidence on that issue. But a change in the caps does have to be justified by somethingand that is where the rule at issue in this case fails. The Commission has not presented any justification with any support in the record for its decision to require the inclusion of sales tax in its Standard Lease Caps.
The Commission claims that industry practice was inconsistent, and that the resulting confusion justified a new, uniform rule. As we explained above, however, the claim of inconsistency has no record support. The Commission also asserts, in conclusory terms, that its new regulation was a mere clarification that its Standard Lease Caps were always intended to include sales tax. But there is no evidence that that was the Commission's intention; indeed, there is considerable evidence that the Commission never thought about the question one way or the other until the proceedings that resulted in rule 1-78 (a) (4). And the Commission does not explain why, if it believed adding sales tax on top of the Standard Lease Caps to be unlawful under the old regulations, it permitted taxi owners to do so openly for a decade.
*334 In short, on this record, rule 1-78 (a) (4), as it relates to sales tax, appears to be what petitioners say it isan arbitrary and capricious decision to transfer money from taxi owners to taxi drivers. "Absent a predicate in the proof to be found in the record, [an] unsupported determination ... must ... be set aside as without rational basis and wholly arbitrary" (Matter of Jewish Mem. Hosp. v Whalen, 47 NY2d 331, 343 [1979]; see also New York State Assn. of Counties v Axelrod, 78 NY2d 158, 167 [1991]). We therefore annul the challenged part of the regulation.
In view of the result we reach, we do not need to consider petitioners' alternative argument that to make the Standard Lease Caps inclusive of sales tax violates the Tax Law. However, in case the Commission chooses to return to this subject, or confronts a similar issue, we point out that the Tax Law issue might have been avoided by changing the form of the regulation. Tax Law § 1132 (a) (1) requires a vendor to collect sales tax from the customer; the vendor is not permitted to absorb the tax (see also Tax Law § 1133 [d]; 20 NYCRR 525.2, 532.1). On the other hand, if the Commission chose to reduce its Standard Lease Caps in order to offset the burden of sales tax on drivers, that would present no obvious Tax Law problem.
Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed with costs, and Commission Rule § 1-78 (a) (4) annulled to the extent that it forbids owners of taxicabs from collecting sales tax in addition to Standard Lease Caps.
Order, insofar as appealed from, reversed, etc.