OPINION OF THE COURT
Michael D. Stallman, J.
On remand from the Court of Appeals, petitioners move for “incidental damages” in this CPLR article 78 proceeding.
The background of this litigation was succinctly set forth in the decision of the Court of Appeals:
“Regulations of the New York City Taxi & Limousine Commission limit the rates that may be charged by owners of taxicabs who lease those cabs to drivers. In this case, owners challenge a Commission regulation that prohibits owners from collecting sales tax in addition to the maximum permitted lease rates. We hold that the regulation must be annulled, because the Commission has not shown any *938 rational basis for it.” (Metropolitan Taxicab Bd. of Trade v New York City Taxi & Limousine Commn., 18 NY3d 329, 331 [2011].)
The regulation at issue, Rules of New York City Taxi & Limousine Commission (35 RCNY) § 1-78 (a) (4), was adopted in 2009.
Having successfully prevailed in this proceeding to annul 35 RCNY 1-78 (a) (4), petitioners now seek to recover the monies that they allegedly could not have collected from their taxicab lessees while the regulation was in force — from May 1, 2009 until December 15, 2011, the date of entry of the Court of Appeals decision. Petitioners argue that they are entitled to recover these monies as incidental damages, pursuant to CPLR 7806.[1] Respondents oppose the motion.
L
As a threshold matter, respondents argue that petitioners abandoned their claim for incidental damages on appeal. Respondents reason that petitioners’ claim for monetary relief was abandoned because they failed to preserve it for appeal. According to respondents, petitioners never raised their claim for monetary relief in their appellate papers either before the Appellate Division, First Department, or in their appeal to the Court of Appeals.
However, respondents overlook the order of remittitur from the Court of Appeals to this court, which was filed with the County Clerk. It states, in pertinent part: “The Court further orders that this record of the proceedings in this Court be remitted to Supreme Court, New York County, there to be proceeded upon according to law.”
“ £[R]emittitur is the mandate of the Court of Appeals which must be strictly followed.’ If the respondents herein (or petitioners) ‘were uncertain as the effect to be given the language employed by the Court of Appeals, the remedy was an application to that court.’ ” (Matter of Natural Resources Defense Council v New York City Dept. of Sanitation, 214 AD2d 41, 42-43 [1st Dept 1995].) “[T]he remittitur operates as a mandate requiring further action by such court in conformity with the decision.” (Arthur Karger, Powers of the New York Court of Appeals § 19:12 at 659 [3d ed rev 2005].) Here, such further action would appear to be a determination of petitioners’ claim for *939 incidental damages. Had the Court of Appeals viewed that petitioners had abandoned their claim for incidental damages, it would not have remitted the matter to the Supreme Court for further proceedings.[2]
IL
Turning to the merits, CPLR 7806 states, in pertinent part:
“Any restitution or damages granted to the petitioner must be incidental to the primary relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity.”
The parties dispute whether the damages that petitioner seeks here are incidental to the primary relief, and respondents further contend that the damages would not otherwise be recoverable “on the same set of facts in a separate action or proceeding.”
A.
According to respondents, the damages sought pursuant to CPLR 7806 “must be based on [the] facts of the underlying Article 78 petition without significant additional submissions.” (Opposing mem at 20.) That is, respondents interpret the words “same set of facts” in CPLR 7806 to mean that the damages must be based on the “same set of facts” on which the primary relief was granted. Consequently, respondents contend that petitioners’ proof of damages and the calculation of damages would essentially be limited to what is already in the record.
Respondents have taken the words “same set of facts” out of context. In its proper context, CPLR 7806 provides that damages “must be such as [petitioners] might otherwise recover on the same set of facts in a separate action ... in the supreme court against the same body or officer in its or his official capacity.” Had petitioners brought a separate action against the Taxi & Limousine Commission (TLC) and its Commissioner, alleging the same facts as the petition, petitioners’ proof of damages would not have been limited solely to the current record. The parties would have had the benefit of conducting discovery in the separate action.
*940 The authorities that respondents cite do not support their interpretation. In Lukas v Ascher (299 AD2d 262, 263 [1st Dept 2002]), the Appellate Division stated that the damages sought were not “such as [petitioner] might otherwise recover on the same set of facts in a separate action” because the damages sought were speculative. That is, the speculative nature of the damages sought would also have doomed an action brought by the petitioner. Contrary to respondents’ contention, Murphy v Capone (191 AD2d 683 [2d Dept 1993]) did not hold that a petitioner who brought an article 78 proceeding had to commence a separate action due to extrinsic evidence outside of the record of the article 78 proceeding.[3]
B.
“Whether damages are ‘incidental to the primary relief sought’ depends upon the facts of the case.” (Pauk v Board of Trustees of City Univ. of N.Y., 68 NY2d 702, 705 [1986].) As the Court of Claims observed, “there is no universally accepted standard or test to be applied in making such a determination.” (Safety Group No. 194 v State of New York, 2001 NY Slip Op 40099, *9 [Ct Cl 2001].) Further complicating the inquiry is the procedural context in which this issue arises: the issue of whether the relief sought is incidental to the primary relief sought arises in cases where the principal issue was whether the matter should have been brought in the Supreme Court, or in the Court of Claims.
“The short, and unhelpful, answer appears to be that some types of challenges that are appropriately made by way of an Article 78 proceeding must be brought in that forum only, while others may be asserted in either Supreme Court or the Court of Claims — and sometimes two separate proceedings may be required.” (Id. at *17.)
As petitioners indicate, they would not be entitled to any monetary relief had the regulation been upheld. The fact that the challenged regulation had to be annulled for any hope of a monetary recovery does not mean that the monetary relief is *941 therefore recoverable as “incidental damages” pursuant to CPLR 7806. The inquiry does not end there.
In Safety Group No. 194, which petitioners cite, the Court of Claims observed that “incidental damages” would be a monetary award which was an “automatic consequence of the equitable relief,” based on Matter of Gross v Perales (72 NY2d 231 [1988]) (2001 NY Slip Op 40099, *16).
In Matter of Gross, the New York State Department of Social Services (DSS) withheld $20 million from money due to the City of New York as an administrative penalty, following a DSS audit for the City’s compliance with regulations governing the termination or reduction of public assistance benefits to recipients. The City commenced an article 78 proceeding in Supreme Court to annul DSS’s determination of the City’s noncompliance and to annul the administrative penalty.
The State of New York argued that the Supreme Court lacked subject matter jurisdiction, insofar as the State characterized the City’s claim as one for money damages against the State of New York. The Supreme Court rejected the State’s argument, found that DSS had acted arbitrarily and capriciously, and granted the petition in its entirety. On appeal, the Appellate Division modified so much of the judgment as awarded interest on the $20 million in reimbursements. (Matter of Gross v Perales, 133 AD2d 37 [1st Dept 1987].)
On appeal, the Court of Appeals rejected the State’s contention that the City’s claim was essentially one for money damages. The Court of Appeals reasoned,
“Only if it was found that the NYSDSS acted arbitrarily and capriciously could its determination, and the concomitant administrative penalty, be annulled. This accomplished, the City was then entitled to the withheld reimbursements under the Social Services Law. This is true whether or not the court directed payment, since upon nullification of the underlying administrative action, the State had a statutory duty to reimburse the City. Consequently, in ordering payment to the City, the court merely directed the State to fulfill its statutory duty.” (Matter of Gross, 72 NY2d at 236.)
Put differently, under Matter of Gross, “money is incidental if a grant of the relief that is the primary aim of the Article 78 proceeding would make it a ‘statutory duty’ of the respondent to pay the petitioner the sum sought.” (Siegel, NY Prac § 570 at 1014 [5th ed 2011].)
*942 Here, petitioners want to be placed in the economic position that they assert they would have been in had the regulation never been enacted.[4] However, the City had no statutory duty to pay petitioners the damages sought here, either before the regulation was enacted, or after it was annulled. The invalidated regulation prohibited taxicab owners from collecting sales tax from their lessees in excess of the maximum permitted lease rates. The sales tax that those owners collected was remitted to the State of New York. (Mazer reply aff H 8; see also Freud aff 1i 6.)[5] As respondents point out, the damages that petitioners seek to recover are therefore not funds that the City collected or withheld from petitioners that can be refunded or now paid to petitioners (cf. Matter of New York State Assn. of Homes & Servs. for Aging v Perales, 179 AD2d 296, 298 [3d Dept 1992] [Commissioner of Social Services must provide, as incidental damages, the “portion of the Medicaid rate withheld or recouped (from nursing homes) as a result of application of the invalid emergency regulation”]; Matter of Adams v Welch, 272 AD2d 642, 643 [3d Dept 2000] [court confirmed Special Referee’s recommendation for a rollback of petitioners’ tax assessments and indicated that petitioners were entitled to refunds]). Neither are the damages sought akin to back pay and fringe benefits of a government employee that would be paid after a determination terminating the employee was annulled, because the employee would have been restored to the payroll. (Cf. Pauk v Board of Trustees of City Univ. of N.Y., 68 NY2d 702 [1986]; Matter of Awad v State Educ. Dept. of N.Y., 240 AD2d 923 [3d Dept 1997].)
As discussed below, petitioners are asserting a different kind of injury than cases involving those seeking tax refunds, payments, or back pay; petitioners are seeking to recover losses that they allegedly incurred by reason of their compliance with the regulation. This kind of injury is different from those article 78 cases upon which petitioners rely. The cases that petitioners cite are therefore inapposite.
*943 Safety Group No. 194 also articulated a second standard it gleaned from several Court of Claims cases, which it called, “Determining What A Court ‘Has To Do’ to Award Money Damages.” (Safety Group No. 194, 2001 NY Slip Op 40099, *11.) In other words, “a money damage claim is incidental to relief sought in an Article 78 proceeding when, in order to award the money judgment, the court must engage in the type of inquiry and analysis that is appropriate to such a proceeding and inappropriate to an action at law.” (Id. at *13.) That is, the monetary relief is incidental to the article 78 proceeding if the matter was properly brought as an article 78 proceeding, and it is not when the matter should have been brought as an action at law. In this court’s view, this standard does not provide practical or clear guidance, and the cases on which this standard is based involved the issue of jurisdiction of the Court of Claims.
In conclusion, the monetary relief that petitioners seek is not recoverable as incidental damages pursuant to CPLR 7806.
IIL
A claim for monetary relief that is not incidental relief to be awarded pursuant to CPLR 7806 may be severed and converted to a plenary action. (See e.g. Matter of Ingram v Nassau County, 85 AD3d 1175 [2d Dept 2011]; Raykowski v New York City Dept. of Transp., 259 AD2d 367, 368 [1st Dept 1999].) However, the court agrees with respondents that they are immune from suit for the alleged damages arising out of the enactment of 35 RCNY 1-78 (a) (4).
“Governmental immunity under the decisional law of this State does not attach to every act, but when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action. Whether absolute or qualified, this immunity reflects a value judgment that — despite injury to a member of the public — the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury.” (Haddock v City of New York, 75 NY2d 478, 484 [1990] [citations omitted]; see Restatement [Second] of Torts § 895C [2] [b] [“A local *944 ' governmental entity is immune from tort liability for acts and omissions constituting . . . the exercise of an administrative function involving the determination of fundamental governmental policy”].)
Thus, “the mere enactment of legislation cannot serve as a basis for imposing civil liability, even where such legislation is subsequently held to be unconstitutional. ’ ’ (Xerox Corp. v Town of Webster, 131 Misc 2d 817, 821 [Sup Ct, Monroe County 1986]; see also Barrett v State of New York, 220 NY 423, 429-430 [1917] [“We know of no principle of law under which the state becomes liable because of the adoption of an unconstitutional statute”].) Here, the enactment of a regulation exemplifies administrative action that would call for the agency’s judgment, expertise, and evaluation of basic policy.
Barrett v State of New York (220 NY 423 [1917]) is instructive. In 1904, the State of New York passed legislation to protect the wild beaver from extinction. Barrett and others, owners of valuable tracts of poplar trees, brought suit in the Court of Claims against the State for poplars felled by beavers. Barrett argued, among other things, that the law was an unreasonable exercise of police power. In upholding the legislation, the Court of Appeals stated, “We hold, therefore, that the acts referred to are constitutional. But had we reached a different conclusion the respondents would not be aided. We know of no principle of law under which the state becomes liable because of the adoption of an unconstitutional statute.” (Barrett, 220 NY at 429-430.)[6] The Court of Appeals therefore reversed the Appellate Division’s decision affirming an award for the loss.
Just as Barrett claimed that he suffered economic loss after the statute was enacted, petitioners similarly claim to have suffered economic loss due to the enactment of the TLC’s regula *945 tion. For Barrett, he could no longer take action against the beaver that damaged poplar trees that made his land valuable; for petitioners, they could no longer collect sales tax from their lessees in excess of the maximum permitted lease rates. The fact that the TLC regulation was subsequently invalidated does not subject the City to liability for losses that petitioners claimed to have suffered by reason of their compliance with the regulation.
Petitioners argue that immunity should not apply where an agency did not, in fact, evaluate any policy or exercise its judgment and expertise. As much as respondents claim here that the TLC “exercised its expert judgment in policy matters” (opposing mem at 31), petitioners point out that the Court of Appeals ruled that the enactment of the subject TLC regulation was arbitrary and capricious:
“[A] change in the caps does have to be justified by something — and that is where the rule at issue in this case fails. The Commission has not presented any justification with any support in the record for its decision to require the inclusion of sales tax in its Standard Lease Caps. . . .
“ ‘Absent a predicate in the proof to be found in the record, [an] unsupported determination . . . must ... be set aside as without rational basis and wholly arbitrary.’ ” (Metropolitan Taxicab Bd. of Trade, 18 NY3d at 333-334 [citation omitted].)
However, to adopt the exception that petitioners advocate would essentially allow that exception to swallow what remains of municipal immunity for legislative or quasi-legislative acts. Following petitioners’ reasoning, every legislative act or regulation that the City enacts would expose the City to civil liability for costs of compliance with the law, if the act or regulation were later invalidated in court.
Because there is no cognizable cause of action against respondents for the alleged injury sought, petitioners’ claim for monetary relief in this article 78 proceeding shall not be severed and converted to a plenary action. (Matter of Ingram, 85 AD3d at 1178; Matter of Cramer v New York State Racing Assn., 136 AD2d 104, 108 [3d Dept 1988].)
Conclusion
Accordingly, it is hereby ordered that petitioners’ motion for an order awarding petitioners incidental damages is denied.

. The motion was assigned to this Justice, due to the retirement of the Honorable Jane Solomon, the Justice who was originally assigned to this article 78 proceeding.

. The remittitur here was not “for further proceedings not inconsistent with the opinion herein,” in which case “all that remained to be done by the trial court was to enter a judgment giving effect to our decision.” (Lipton v Bruce, 4 NY2d 975, 977 [1958].)

. The issue in Murphy was whether the plaintiff was collaterally estopped from litigating the issue of consequential damages in light of prior article 78 proceedings. Supreme Court ruled that the damages sought in the plenary action should have been raised in the prior article 78 proceedings as incidental damages. The Appellate Division disagreed, stating, “The plaintiffs causes of action to recover damages were not incidental to the primary relief requested in the first proceeding pursuant to CPLR article 78, to wit, reinstatement.” (Id. at 684-685.)

. The parties did not indicate whether the taxicab owners may now recoup from their lessees the sums that they claim they were prohibited from collecting when the regulation was in force.

. Petitioners indicate that some members of petitioner Metropolitan Taxicab Board of Trade leased medallions to drivers who own their own vehicles. (Mem at 2 n 4.) According to petitioners, the TLC regulation did not affect these lessors, in that sales and rental use taxes were not imposed nor collected. (Mem at 3 n 6.)

. It is important to recognize that, generally speaking, a property owner is entitled to just compensation under the Takings Clause of the Fifth Amendment to the United States Constitution when a government regulation “forces a property owner to submit to a permanent physical occupation, or deprives him of all economically beneficial use of his property.” (Stop the Beach Renourishment, Inc. v Florida Dept. of Environmental Protection, 560 US —, —, 130 S Ct 2592, 2601 [2010] [citations omitted].) Petitioners are not advancing such a claim here.
Also, municipalities “can be sued directly under [42 USC] § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body’s officers.” (Monell v New York City Dept. of Social Servs., 436 US 658, 690-691 [1978].) Petitioners are not advancing this type of claim either.