This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 37
In the Matter of Gerald E. Loehr
et al.,
                Respondents,
          v.
Administrative Board of the
Courts of the State of New York,
                Appellant.

Lee Alan Adlerstein, for appellant.
Robert A. Spolzino, for respondents.

PER CURIAM:

Plaintiffs are three retired Supreme Court Justices certified for further service on that bench.[1]  Prior to their certification, the Chief Administrative Judge signed an administrative notice declaring that the policy of the Administrative Board of the Courts of the State of New York

---

[1] The New York Constitution refers to "certificated" judges (art VI, § 25 [b]).  Subsequent statutes refer to "certified" judges (Judiciary Law § 115; Retirement and Social Security Law § 101 [c]).  We follow those statutes' usage without meaning to distinguish the two terms.

- 1 -

henceforth would be that "no judge . . . certificated for service as a Justice of the Supreme Court pursuant to Judiciary Law § 115 may receive, concurrent with receipt of a salary for such service, a retirement allowance for prior judicial service within the Unified Court System."  Plaintiffs seek a declaration that the policy is illegal and unconstitutional.  Because the Board enjoys nearly unfettered discretion in determining whether to certify a retired Justice, and because its decision here was not contrary to any law or constitutional mandate raised by plaintiffs, we now reverse the Appellate Division and reinstate the judgment of Supreme Court.

I.

Justice Gerald Loehr served first as a Judge of the Westchester County Court, and in 2012 was elected to a 14-year term as a Supreme Court Justice, to commence on January 1, 2013.  On December 31, 2012, Justice Loehr retired, began receiving retirement benefits, and simultaneously drew the salary to which he was entitled as a Supreme Court Justice.  In anticipation of turning 70 on May 19, 2013, Justice Loehr applied to the Administrative Board for certification pursuant to Judiciary Law § 115.  Without that certification, he would have been prohibited from serving as a Supreme Court Justice after December 31, 2013.

Justice J. Emmett Murphy served as a full-time judge from 1980 to 2011.  He became a Judge of the Westchester County Court in 1991, and was elected to Supreme Court in 1996.  In

2010, Justice Murphy was reelected as a Supreme Court Justice with a term commencing on January 1, 2011.  On December 31, 2010, Justice Murphy retired, and began receiving retirement benefits thereafter.  Justice Murphy turned 70 on March 12, 2011, and in that same month applied to the Administrative Board for his first certificate pursuant to Judiciary Law § 115.  Without that certification, he would have been prohibited from serving as a Supreme Court Justice after December 31, 2011.  Because judges may be certified only for a two-year term, Justice Murphy applied to be recertified in 2013.

Justice William Miller joined the Unified Court System in 1983 when he was appointed, after service in the Kings County District Attorney's office, to the Criminal Court of the City of New York.  In 2012, he was elected to Supreme Court for a 14-year term commencing January 1, 2013.  Prior to taking that office, and on the advice of the pension director for the Office of Court Administration, Justice Miller applied for and was granted retirement benefits.  Because he would reach age 70 in 2013, Justice Miller also applied to the Administrative Board to be certified to perform the duties and draw the salary of a Supreme Court Justice for the two years commencing January 1, 2014. Without that certification, he would have been prohibited from service as a Supreme Court Justice after December 31, 2013.

While plaintiffs' applications were pending, the Board released the administrative order at issue, giving notice that it

would no longer certify applicants who would, on reappointment, choose to receive both a retirement allowance for prior judicial service and their salary as a certified justice. The Board's order was grounded in its belief that judges who simultaneously drew both a full judicial salary and a full pension (colloquially called "double-dipping") adversely affected both the public's impression of the court system and the court system's negotiations with the other branches over crucial budgetary and personnel matters. A subsequent memorandum from the Office of the Chief Administrative Judge clarified that retired Justices otherwise approved for certification would be certified only if they deferred receipt of their New York State pensions until their judicial service ended.

Plaintiffs commenced this hybrid CPLR article 78 proceeding and declaratory judgment action seeking an order declaring the Board's policy illegal and unconstitutional, directing the Board to certify them, and awarding money damages, plus attorney's fees and litigation expenses incidental to the relief.[2] Supreme Court dismissed the petition for failure to state a claim and declared the Board's policy to be neither illegal nor unconstitutional. Plaintiffs appealed to the

---

[2] It is undisputed that plaintiffs would have been certified but for the policy announced in the administrative order. With the Board's agreement, they have continued to serve as Supreme Court Justices and receive both their full salaries and pensions during the pendency of this lawsuit.

Appellate Division, which reversed, granted the petition, and declared that the Board's administrative order violated the New York Constitution, the Judiciary Law, and the Retirement and Social Security Law (130 AD3d 89 [3d Dept 2015]).  The Board then filed a notice of appeal as of right to this Court under CPLR 5601 (b) (1).

                                II.

        We start with the basic proposition that New York's public policy strongly disfavors the receipt of state pensions by persons also receiving state salaries.  Section 150 of the Civil Service Law establishes New York's general public policy against the simultaneous receipt of a state pension and a state salary:

> "Except as otherwise provided by sections one hundred one, two hundred eleven, and two hundred twelve of the retirement and social security law . . . if any person subsequent to his or her retirement from the civil service of the state . . . shall accept any office, position or employment in the civil service of the state . . . to which any salary or emolument is attached . . . any pension or annuity awarded or allotted to him or her upon retirement, and payable by the state . . . or out of any fund established by or pursuant to law, shall be suspended during such service or employment and while such person is receiving any salary or emolument therefor except reimbursement for traveling expenses."

        Indeed, as we explained in Baker v Regan, the "Legislature has for [nearly] a . . . century evinced a strong public policy in favor of the suspension of retirement benefits of a person who after retiring accepts an office in the civil

service of the State" (68 NY2d 335, 341 [1986]).  Moreover, we

emphasized that "[a]lthough exceptions have been made to this

general proscription, it is clear that such exceptions were

enacted for limited purposes and were not meant to abrogate or

dilute the long-standing and overriding State policy to prohibit

the receipt of retirement benefits and salary at the same time"

(id.).

That "overriding state policy" is repeatedly restated

in the Retirement and Social Security Law.  Section 101 (a)

provides:

> "If a retired member, receiving a retirement
> allowance for other than physical disability,
> returns to active public service, except as
> otherwise provided in this section or section
> two hundred eleven or two hundred twelve of
> this chapter, and is eligible for membership
> in the retirement system, he thereupon shall
> become a member and his retirement allowance
> shall cease."

Section 101 (b) further provides, as to temporary state

employees: "The payment of any retirement allowance . . . on

account of retirement for other than physical disability shall be

suspended as provided herein, during the time that the

beneficiary thereof is in receipt of other compensation paid from

direct or indirect state or municipal taxes."

Section 101 (c) expresses that same public policy

specifically as regards certified Supreme Court Justices,

stating:

> "In the event that a judge or justice shall

> . . . [h]ave retired and is receiving a
> retirement allowance from this retirement
> system, or another retirement system of which
> he [or she] was a member, and . . . [b]e
> certified for service as a justice of the
> supreme court pursuant to section one hundred
> fourteen or one hundred fifteen of the
> judiciary law, his [or her] retirement
> allowance shall cease" (emphasis supplied).[3]

Section 211 of the Retirement and Social Security Law expresses the same general prohibition, but provides exemptions allowing retirees to collect their full pensions and at least a partial salary in two basic situations: (a) when the retiree's total income, including her retirement allowance and salary, is not more than $500 above the greater of (1) her annual unadjusted retirement allowance or (2) the salary on which her retirement allowance is based or her final salary, whichever is greater; or (b) the position in which she is employed is not a position in the service of a former employer.[4]  Section 211 (3) also provides

---

[3] The parties briefly discuss section 101 (c), which by its terms "shall be controlling notwithstanding any other provision of this chapter."  However, no party has asked us to determine whether section 101 (c) and/or section 211 take precedence over section 212, and absent any developed argument regarding the interpretation and reconciliation of those sections, we consider section 101 (c) only as part of the legislative expression of the public policy of the State concerning simultaneous receipt of state retirement benefits and a state salary.
[4] By way of example, section 211's first exemption would cover a person who retired from a high-paying position and is subsequently reemployed in a lower-paying position by the same employer, allowing such a person to earn a combination of pension and (lower-paying) salary up to a maximum of the salary paid to persons in the employee's former (higher-paying) position.  Its second exemption covers retirees who are subsequently employed by a new employer (e.g., a retired police detective who is

a catch-all in case its limits are violated: "If a retired person employed under this section earns in such employment in any calendar year an amount in excess of the maximum earnings allowed under subdivision one of this section, his [or her] retirement allowance and supplemental retirement payments shall be suspended until the total amount so suspended equals the amount of such excess."

III.

Keeping in mind New York's general public policy concerning the simultaneous receipt of a state pension and a state salary, we consider the action of the Board.

The New York Constitution requires various judges, including Supreme Court Justices and Court of Appeals Judges to "retire on the last day of December in the year in which he or she reaches the age of seventy" (NY Const, art VI, § 25 [b]). The sole exception to that mandate is that a retired Court of Appeals Judge or Supreme Court Justice may, for no more than six years thereafter, perform the duties of a Supreme Court Justice if certified "in the manner provided by law that the services of such . . . justice are necessary to expedite the business of the court and that he or she is mentally and physically able and competent to perform the full duties of such office" (id.). The legislature has vested the Board -- composed of the Chief Judge and the four Presiding Justices of the Appellate Division -- with

subsequently hired as a school security officer).

the power to determine whether those two criteria are met and, if so, whether to certify former Justices for service (Judiciary Law § 115).  Under the Judiciary Law, "[a] retired justice so certified shall for all purposes, including powers, duties, salary, status and rights, be a justice of the supreme Court" (Judiciary Law § 115 [3]).

The Board enjoys "the very broadest authority for the exercise of responsible judgment" and "very nearly unfettered discretion in determining whether to grant applications of former Judges for certification" (Matter of Marro v Bartlett, 46 NY2d 674, 681-682 [1979]).  Provided it complies with the two criteria set forth in the Constitution, and absent proof that its determination violates statutory prescriptions or promotes a constitutionally impermissible purpose, the Board's authority is not subject to judicial review (id. at 679).

In the case before us, we are asked to determine whether the Board exercised its discretion within the framework provided by the Constitution.  As in Marro (id. at 680), the mental and physical abilities of the Justices are not at issue. Rather, the issue presented is whether the Board's policy is rationally related to whether certification is "necessary to expedite the business of the court."[5]  We hold that it is.

_____

[5] Because the Board argues, and we agree, that its decision was an appropriate application of the two constitutional requirements, we do not decide here whether those requirements establish sufficient conditions for certification or only a

Whether the services of a particular Justice are "necessary to expedite the business of the court" encompasses much more than a mechanical inquiry into the size of the courts' docket divided by the number of Justices.  Viewed in isolation, the services of an additional mentally and physically able Justice will always expedite the business of the courts.  Were the inquiry merely mechanical, the Board would need no broad, largely unreviewable discretion.  But the impact of any certification, as the Constitution's use of the word "necessary" implies, must be determined with the costs -- including non-monetary costs -- of that certification in mind.  The Constitution and the Judiciary Law entrusted this determination to "the integrity and collective wisdom of a carefully selected, high level certifying authority endowed with peculiar experience and expertise" (Marro, 46 NY2d at 682), rather than to functionaries responsible for the court's docket or budget, for precisely that reason.

Here, the Board concluded that the net effect of certifying pensioners – taking into account their potential future contributions as certified Justices – would be detrimental to the creation of new judgeships and thereby hamper rather than expedite the business of the courts.  The Board also calculated that the cost of certifying pensioners included not only the

necessary floor above which the Board may choose to add additional requirements.

narrow matter of annual pay, but also the impact of "double-dipping" on the courts' public prestige and other private negotiations.  On that appropriate basis, it decided that the services of plaintiffs and other retired Justices, as well as retired Judges of the Court of Appeals, who would not agree to defer their pensions would, on balance, detrimentally impact the court system and were not necessary to expedite its business.

The facts here differ from those in Marro insofar as the Board chose to announce a prospective rule rather than issue, as plaintiffs concede it could have, inscrutable applicant-by-applicant determinations.  However, we see no reason to curtail the Board's power because it opted to reveal and explain its rationale in the interest of providing those aspiring to certification with the opportunity to make an informed choice. Marro excused the Board from promulgating its certification criteria (id. at 681), but did not bar or discourage it from doing so.

IV.

The Board's determination that certifying retired Supreme Court Justices would not expedite the business of the courts did not violate any statutes or promote an unconstitutional purpose.  Plaintiffs' reliance on section 212 in support of their claim that the Board has exceeded its authority

is misplaced.[6]

Section 212 provides:

> any retired person may continue as retired
> and, without loss, suspension or diminution
> of his or her retirement allowance, earn in a
> position or positions in public service in
> any calendar year an amount not exceeding the
> amount set forth in the table in subdivision
> two of this section . . . However, there
> shall be no earning limitations under the
> provisions of this section on or after the
> calendar year in which any retired person
> attains age sixty-five."

Plaintiffs interpret section 212 to allow all pensioners over the age of 65 –- including certified Justices –- the option of receiving an undiminished pension alongside a full salary. Even under that interpretation, the Board did not act in contravention of that section.

As an initial matter, our holding in Marro is clear that a former Justice has no right to be certified at all. Because the certification process inaugurates a new designation to judicial office after a complete break from service (rather than permitting a Justice to continue in a position from which he was retired by constitutional mandate), Justices have no right to certification upon which the Board's determination could impinge (id. at 682). That is, former Justices have no right to new employment via certification and, therefore, they have no right

---

[6] We express no view on the Appellate Division's footnoted statement that "section 101 has been effectively superceded by Retirement and Social Security Law § 212." That issue was not raised by the parties either here or in the Appellate Division.

to receive the salary associated with that position and simultaneously draw a retirement allowance.  Plaintiffs' decision to opt into section 212 of the Retirement and Social Security Law -- which applies to retirees of all ages throughout New York State and was not intended to disturb a constitutional scheme narrowly tailored to retired Justices between the ages of 70 and 76 -- did nothing to upset that holding or to create a new entitlement.

Section 212 is one of the limited exceptions discussed in Baker.  That exception, which the legislature enacted to benefit "low income pensioners" (Bill Jacket, L 1964, ch 803), provides retired persons the option of drawing, and their prospective public employers the option of providing, a limited amount of earnings in excess of the already-provided pension. "May," however, is a "term of enablement but not of entitlement" (Marro, 46 NY2d at 680).  The choice of verb and the elective nature of the section 212 scheme defeat plaintiffs' suggestion that RSSL § 212 reduces the Board's broad discretion to act in the best interest of the courts and instead requires it to certify otherwise-qualified former Justices who opt into that section's provisions.

Plaintiffs' remaining arguments, that the Board's policy violates Judiciary Law § 115 (3) by creating two classes of Justices and impairs plaintiffs' pension benefits in violation of article V, § 7 of the New York Constitution, fail.  Because

former Justices have no right to certification or to receive a pension alongside a full salary and are, under the Board's policy, able to choose to continue as a retired Justice with a full pension or, if they prefer, to suspend their pension and seek certification, the Board's order runs afoul of neither Judiciary Law § 115 (3) nor article V, § 7.[7]  Plaintiffs' final argument, that the order constitutes an administrative policy for general application and so could not have been issued by the Chief Administrative Judge absent prior approval of this Court under article VI, § 28 (c) of our Constitution and Judiciary Law § 211 (a) (1) was not preserved for our review.

Accordingly, the order of the Appellate Division should be reversed, without costs, and the judgment of Supreme Court reinstated.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed, without costs, and judgment of Supreme Court, Albany County, reinstated.  Opinion Per Curiam.  Judges Rivera, Stein, Fahey, Garcia and Wilson concur.  Chief Judge DiFiore took no part.

Decided May 4, 2017

---

[7] Donner v New York City Employees' Retirement Sys. (33 NY2d 413 [1974]), on which plaintiffs rely, is inapposite.  Here, unlike in Donner, there is a constitutional bar to employment after age 70, after which the Constitution and Judiciary Law § 115 vest the Board with extremely broad discretion to evaluate the expedition of the courts' business in deciding whether to certify judges.