Matter of Gesmer v Administrative Bd. of the N.Y. State Unified Ct. Sys. (2021 NY Slip Op 01376)





Matter of Gesmer v Administrative Bd. of the N.Y. State Unified Ct. Sys.


2021 NY Slip Op 01376


Decided on March 9, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 9, 2021

532566, 532590

[*1]In the Matter of Ellen Gesmer et al., Respondents-Appellants,
v
Administrative Board of the New York State Unified Court System et al., Appellants-Respondents.

Calendar Date: February 9, 2021

Before: Lynch, J.P., Clark, Reynolds Fitzgerald, Smith* and Curran,[FN*] JJ.


Greenberg Traurig, LLP, Albany (Henry M. Greenberg of counsel) and Office of Court Administration, New York City (Eileen D. Millett of counsel), for appellants-respondents.
Morrison Cohen LLP, New York City (Y. David Scharf of counsel) and Arnold & Porter Kay Scholer LLP, New York City (James M. Catterson of counsel), for respondents-appellants.
Kaplan Hecker & Fink LLP, New York City (Roberta A. Kaplan of counsel), for Jonathan Lippman and others, amici curiae.
Lisa Zeiderman, White Plains, for Richard Andrias and others, amici curiae.



Lynch, J.P.
(1) Appeal, by permission (transferred to this Court by order of the Appellate Division, Second Department), from an order of the Supreme Court (Baisley Jr., J.), entered December 11, 2020 in Suffolk County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, among other things, denied respondents' motion to dismiss the petition/complaint, and (2) cross appeals (transferred to this Court by order of the Appellate Division, Second Department) from a judgment of said court, entered December 30, 2020 in Suffolk County, which, among other things, partially granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to annul a determination of respondent Administrative Board of the New York State Unified Court System denying certification for certain appellate Supreme Court justices.
On September 22, 2020, respondent Administrative Board of the New York State Unified Court System (hereinafter the Board) voted to deny certification to 46 of the 49 elected Supreme Court Justices who, having reached the mandatory retirement age of 70 or more at the end of 2020, applied for certification for a two-year period (see NY Const, art VI, § 25 [b]; Judiciary Law § 115). Petitioners include four elected Supreme Court Justices serving on the Appellate Division, First or Second Department, who reached the mandatory retirement age as of December 31, 2020 (hereinafter collectively referred to as the petitioner Justices), as well as an attorney residing in Suffolk County who litigates civil actions.[FN1] The certification denial also applied to three other Supreme Court Justices serving on the Second or Third Department, and to Supreme Court Justices throughout the state. The Board consists of respondent Janet DiFiore, as Chief Judge of the Court of Appeals, and the Presiding Justices of each of the four judicial departments of the Appellate Division (see NY Const, art VI, § 28 [a]).
On November 5, 2020, petitioners commenced this combined CPLR article 78 proceeding and action for declaratory judgment in Supreme Court, Suffolk County, seeking, among other relief, to have the Board's determination annulled and a new determination made in accord with the governing constitutional and statutory standards. Various motion practice ensued and, by decision and order entered December 11, 2020, Supreme Court denied respondents' motions for (1) a change of venue, (2) dismissal for failure to state a cause of action and lack of personal jurisdiction, and (3) a protective order regarding a previously ordered expedited discovery schedule. This Court granted respondents' motion for permission to appeal from that nonfinal order, stayed discovery and expedited the appeal (see CPLR 5701 [b] [1]; 2020 NY Slip Op 76627[U]).
In the meantime, respondents filed a verified answer on December 16, 2020, attaching a copy of the Board's meeting minutes and an affidavit, bearing the [*2]same date, from respondent Lawrence K. Marks, as Chief Administrative Judge of the Unified Court System (hereinafter the Chief Administrative Judge), explaining the budgetary information that the Board considered in making its determination. Two days later, petitioners applied for a preliminary injunction, which Supreme Court made returnable on December 29, 2020, while granting a temporary restraining order "to allow the [petitioner Justices] and their staffs to continue to serve as Supreme Court Justices and remain in office" pending a decision on the motion. On December 28, 2020, this Court vacated the temporary restraining order (see 2020 NY Slip Op 76952[U]). That same day, respondents filed papers in opposition to the injunction request, including an additional affidavit from the Chief Administrative Judge dated December 28, 2020. At a virtual conference held on December 29, 2020, Supreme Court informed the parties that it would render a determination on the merits. By judgment entered December 30, 2020, Supreme Court granted the second cause of action in the petition/complaint and annulled the Board's determination as arbitrary and capricious (see CPLR 7803 [3]).[FN2] The court then impliedly dismissed the remaining causes of action, holding that they "need not be addressed or are without merit," and further noted that it did not consider any additional papers submitted by the parties after respondents filed their answer.[FN3] Respondents appeal from the judgment and petitioners cross-appeal from so much thereof as dismissed all but the second cause of action. This Court granted respondents' motion to consolidate the appeals (see 2021 NY Slip Op 60490[U]).[FN4]
Supreme Court erred in annulling the Board's determination. By constitutional mandate, a Supreme Court Justice is required to "retire on the last day of December in the year in which he or she reaches the age of [70]" (NY Const, art VI, § 25 [b]). The NY Constitution allows an exception by which a retired Supreme Court Justice may be authorized to perform the duties of a Supreme Court Justice if it is certified "in the manner provided by law that the services of such . . . [J]ustice are necessary to expedite the business of the court and that he or she is mentally and physically able and competent to perform the full duties of such office" (NY Const, art VI, § 25 [b]). This constitutional provision is implemented through Judiciary Law § 115 (1), which provides that a Supreme Court Justice "may, upon his [or her] application, be certified by the [Board] for service as a retired [J]ustice of the [S]upreme [C]ourt upon findings (a) that he [or she] has the mental and physical capacity to perform the duties of such office and (b) that his [or her] services are necessary to expedite the business of the [S]upreme [C]ourt."
Given this framework, the Court of Appeals has determined that the Board enjoys "the very broadest authority for the exercise of responsible judgment" and "very nearly [*3]unfettered discretion in determining whether to grant applications of former Judges for certification" (Matter of Marro v Bartlett, 46 NY2d 674, 681 [1979]). "Provided it complies with the two criteria set forth in the [NY] Constitution, and absent proof that its determination violates statutory prescriptions or promotes a constitutionally impermissible purpose, the Board's authority is not subject to judicial review" (Matter of Loehr v Administrative Bd. of the Cts. of the State of N.Y., 29 NY3d 374, 382 [2017]; see Matter of Marro v Bartlett, 46 NY2d at 681-682). As in both Marro and Loehr, the record presents no issue as to the mental and physical abilities of the petitioner Justices. This dispute focuses on the second component of certification — i.e., whether the services of the Justices are necessary to expedite the business of the courts. As explained in Marro, this component "must be a two-pronged determination — that there is a need for additional judicial [personnel] and that the individual applicant can meet this need at least in part. An individualized evaluation is contemplated, focused more decisively on the applicant than on the need for judicial services" (Matter of Marro v Bartlett, 46 NY2d at 680).
Respondents maintain that the Board acted within the scope of its broad authority by determining as a matter of economic necessity occasioned at least in part by the COVID-19 pandemic that certification of the petitioner Justices was not necessary to fulfill the needs of the court. Petitioners counter, and Supreme Court agreed, that the Board failed to provide the individualized review of each applicant as required under the dual criteria defined in the NY Constitution and the Judiciary Law. The Board minutes explain that the Board "declined to certify 46 of the 49 [Justices] applying for certification owing to current severe budgetary constraints occasioned by the coronavirus pandemic. Three [Justices], having specialized additional assignments[,] were certified." The Board's certification of three applicants reflects both an individualized assessment and a recognition — "at least impliedly" — that additional judicial services are necessary (Matter of Marro v Bartlett, 46 NY2d at 679). As explained in Loehr, however, "whether the services of a particular Justice are 'necessary to expedite the business of the court' encompasses much more than a mechanical inquiry into the size of the courts' docket divided by the number of Justices" (Matter of Loehr v Administrative Bd. of the Cts. of the State of N.Y., 29 NY3d at 382, quoting NY Const, art VI, § 25 [b]). Certainly, it should be recognized that the continued services of the petitioner Justices would advance the needs of the court in managing an expanding caseload. That positive contribution, however, is not the deciding factor, as the Board is charged with balancing the costs of certification with the overall needs of the court system (see Matter of Loehr v Administrative [*4]Bd. of the Cts. of the State of N.Y., 29 NY3d at 382). As explained by the Chief Administrative Judge in his December 16, 2020 affidavit, the Board made the extremely difficult judgment call that certification would prove too costly under the economic dilemma presented. The Chief Administrative Judge emphasized that certification would significantly disrupt overall court operations given that the alternative savings mechanism would require more than 300 layoffs of nonjudicial personnel. Achieving the proper balance for the court system was for the Board to determine. That is the lesson of Loehr, in which the Board's policy decision to preclude the certification of Justices who simultaneously drew a full judicial salary and pension was premised on the needs and, in that case, the reputation of the court system (see id. at 382-383). In our view, the Board acted in accord with the governing standard and within the scope of its broad authority in basing its ultimate decision on the overall needs of the court system.
Turning to petitioners' cross appeal, they contend that Supreme Court erred in dismissing their first, fifth and sixth causes of action.[FN5] We are unpersuaded. The first cause of action, raising a claim that the determination was made in violation of lawful procedure under CPLR 7803 (3), fails for the reasons already stated. Petitioners' fifth cause of action seeks a declaration that the Board's determination violated NY Constitution, article VI, § 4 (e), which authorizes the Governor to designate additional Justices to the Appellate Division upon a certification of need by the Court. This claim is without merit, as the powers of the Governor and the Appellate Division remain fully intact, notwithstanding the Board's determination. Nor does the sixth cause of action, asserting a claim of age discrimination under the Human Rights Law (see Executive Law art 15), state a viable claim. Under Executive Law § 296 (1) (a), it is unlawful for an employer to, among other things, discharge an employee based on age. There was no discharge here insofar as the term of each petitioner Justice expired on December 31, 2020 by constitutional mandate (see Matter of Loehr v Administrative Bd. of the Cts. of the State of N.Y., 29 NY3d at 384). To the extent that petitioners take the position that the Board's decision amounted to discriminatory nonhiring based on age, they have not made a prima facie showing that the Board's decision was made "under circumstances giving rise to an inference of discrimination" (DeKenipp v State of New York, 97 AD3d 1068, 1069 [2012]). Likewise, their disparate impact age discrimination claim is unavailing.
Clark and Reynolds Fitzgerald, JJ., concur.
Curran, J. (concurring in part and dissenting in part).
We would affirm Supreme Court's decision to annul the determination made by respondent Administrative Board of the New York State Unified Court System (hereinafter the Board) denying certification to 46 of 49 [*5]elected Supreme Court Justices who had reached the mandatory retirement age of 70 or more as of December 31, 2020, and who had applied for certification for a two-year period (see NY Const, art VI, § 25 [b]; Judiciary Law § 115 [1]). In our view, that determination was properly annulled because, in denying the applications for certification, the Board did not fully apply the two requisite criteria for certification set forth in NY Constitution, article VI, § 25 (b) and Judiciary Law § 115 (1) (seeMatter of Loehr v Administrative Bd. of the Cts. of the State of N.Y., 29 NY3d 374, 382 [2017]). Therefore, in that regard, we respectfully dissent.
The central facts are not in dispute. In late April 2020, as the full extent of the effects of the coronavirus pandemic on the state budget came into sharper focus, the executive branch expressed its intention to cut spending for the current fiscal year of 2020-2021 by 10% of budgeted levels. It also assumed that the Judiciary and other elected government officials would initiate comparable reductions in their budgets for the current fiscal year. Thus, the Judiciary began looking for ways to reduce its spending for the current fiscal year by about $291 million. Over the next several months, the Judiciary identified spending reductions for the current fiscal year totaling $284 million. The identified cuts would not require laying off a single nonjudicial employee, even though it is undisputed that 90% of the Judiciary's budget consists of such labor costs.
Nonetheless, despite these efforts, there still remained an additional $7 million that needed to be cut if the Judiciary was to meet its stated goals for the current fiscal year. It soon ascertained that the $7 million gap could be closed by denying certification to Supreme Court Justices who had applied for certification. Further, by not certificating these Justices, the Judiciary could save approximately $55 million during the ensuing two-year certification period, when also factoring in the Justices' staffs. In contrast, if all 49 Supreme Court Justices who applied were certificated, a savings of $55 million in the same time frame could be met only by laying off about 324 nonjudicial employees for at least one fiscal year.
Against this backdrop, at a meeting on September 22, 2020, the Board voted to decline certification to 46 of the 49 applicants. The sole reason it gave for the decision not to certify these applicants was "owing to current severe budgetary constraints occasioned by the coronavirus pandemic." The Board granted three applications based on those particular applicants' "specialized additional assignments." On September 29, 2020, respondent Lawrence K. Marks, as Chief Administrative Judge of the Unified Court System (hereinafter the Chief Administrative Judge), issued a memorandum to the state's Administrative Judges announcing the Board's decision and the reason therefor — i.e., the "enormous pressures on the State budget[*6]." The Judiciary thereafter announced that it had met its goal of reducing its budget for the current fiscal year "by 10 percent, or approximately $300 million."
Petitioners commenced this combined CPLR article 78 proceeding and declaratory judgment action seeking, among other things, to annul the Board's determination as violative of lawful procedure, arbitrary and capricious and unconstitutional. Specifically, they alleged that, in denying certification to the four petitioners who are elected Supreme Court Justices serving on the Appellate Division, First or Second Department (hereinafter collectively referred to as the petitioner Justices), the Board did not adhere to the criteria for certification set forth in the NY Constitution and the Judiciary Law. Respondents opposed petitioners' request for expedited discovery on the grounds that only issues of law were presented here and the facts were undisputed, and because the Board had "plenary power" over the certification decision. Simultaneously, respondents also moved to, among other things, dismiss the petition on largely those same grounds — i.e., the Board had unfettered power to grant or deny certification.
Ultimately, by judgment entered December 30, 2020, Supreme Court annulled the Board's determination as arbitrary and capricious, as alleged in the second cause of action, because it had not properly followed the two-step certification process, inasmuch as the Board did not individually consider, and exercise its discretion with respect to, each Justice's application. In light of the foregoing, Supreme Court effectively dismissed the remaining causes of action in the petition/complaint.
Contrary to the conclusion of the majority, we conclude that Supreme Court properly annulled the Board's determination. The NY Constitution provides, in relevant part, that a Supreme Court Justice "shall retire on the last day of December in the year in which he or she reaches the age of [70]" (NY Const, art VI, § 25 [b]). As an exception, however, a retired Supreme Court Justice may nonetheless be authorized to perform the duties of a Supreme Court Justice if he or she is certified "in the manner provided by law that the services of such . . . [J]ustice are necessary to expedite the business of the court and that he or she is mentally and physically able and competent to perform the full duties of such office" (NY Const, art VI § 25 [b]). Judiciary Law § 115 (1) implements that constitutional provision by vesting the Board with the power to certify retired Supreme Court Justices for service "upon findings . . . that he [or she] has the mental and physical capacity to perform the duties of such office and . . . that his [or her] services are necessary to expedite the business of the supreme court." The Court of Appeals has referred to this framework as requiring "two component determinations," which consist of the "more or less objective" competency element and the necessity element (Matter of [*7]Marro v Bartlett, 46 NY2d 674, 680 [1979]). This case involves only the necessity element of that framework.
In Matter of Marro v Bartlett (46 NY2d at 680), the Court of Appeals' first opportunity to construe these constitutional and statutory provisions, the Court explained that the necessity element requires a "two-pronged determination — that there is a need for additional judicial [personnel] and that the individual applicant can meet this need at least in part" (id.). The Court articulated that the determination should be "individualized . . . [and] focused more decisively on the applicant than on the need for judicial services" (id.). Such an approach largely relies "on nonobjective evaluations of the individual [Justices]" applying for certification (id. at 681). A "determination whether the services of any individual former [Justice] are necessary to meet a need for additional judicial [personnel] must always involve the weighing of what must be personal if not private considerations" (id. at 682). Still, in making this determination, the Board has "the very broadest authority for the exercise of responsible judgment" (id. at 681), and its "very nearly unfettered discretion" is "not subject to judicial review in the absence of claims of substance that there had been a violation of statutory proscription or promotion of a constitutionally impermissible purpose, unrelated to the certification process" (id. at 681-682).
More recently, the Court of Appeals reiterated that "[t]he Board enjoys the very broadest authority for the exercise of responsible judgment and very nearly unfettered discretion in determining whether to grant applications of former [Justices] for certification" (Matter of Loehr v Administrative Bd. of the Cts. of the State of N.Y., 29 NY3d at 381-382 [internal quotation marks and citation omitted]). "Provided [that the Board] complies with the two criteria set forth in the [NY] Constitution, and absent proof that its determination violates statutory prescriptions or promotes a constitutionally impermissible purpose, the Board's authority is not subject to judicial review" (id. at 382 [citation omitted]).
In our view, Supreme Court properly determined that, here, the Board did not adhere to the requisite "two-pronged determination" (Matter of Marro v Bartlett, 46 NY2d at 680) and, therefore, correctly annulled the determination denying certification to the petitioner Justices. In support of its determination, the Board submitted the minutes of its meeting at which the determination was made, which reflect that the sole reason it denied certification was based on the "severe budgetary constraints occasioned by the coronavirus pandemic." The Board's reliance purely on this budget-driven, categorical consideration did not establish that it conducted the individualized review of each applicant necessary to comply with the two-step process. A blanket predetermination not to grant 46 applications because of budgetary [*8]constraints essentially constitutes a "mechanical inquiry" by the Board focused solely on monetary considerations, and does not establish that it exercised discretion in evaluating the necessity of each individual applicant to expedite the business of the court (Matter of Loehr v Administrative Bd. of the Cts. of the State of N.Y., 29 NY3d at 382).
We disagree with the majority's conclusion that the Board's reason for denying certification here is akin to the policy at issue in Loehr. In Loehr, the Court of Appeals validated the Board's reliance on a prospectively announced policy not to grant certification to any applicant who also elected to receive a pension because it was "rationally related to whether certification is necessary to expedite the business of the court" (id. at 382 [internal quotation marks omitted]). In addition to monetary considerations, the Court in Loehr determined that the Board's policy also advanced the state's strong public policy against "double-dipping" (id. at 378); therefore, the Board's conclusion that the services of any retired Justice who would not agree to defer his or her pension would "detrimentally impact the court system and were not necessary to expedite its business" served as a valid basis for denying certification under the necessity prong (id. at 383).
The same considerations are not present here. First, the reason given by the Board was not announced prospectively and, therefore, unlike in Loehr, applicants were not afforded a choice with respect to their applications (id. at 382-383). As a prospective rule, the policy in Loehr ensured that the Board took an individualized approach in considering each applicant, while also accounting for the needs of and cost to the Judiciary. Here, in contrast, the applicants were not apprised until after the determination was already made that budgetary considerations alone were the basis for the Board's denial of certification. Thus, unlike in Loehr, instead of serving as a guide for applicants, the Board's reason here was a blanket predetermination to deny most applications, entirely dispensing with any individualized consideration thereof apart from the cost incurred by granting the application. Further, in Loehr, the Board's policy not to certify the retired Justices took into consideration both monetary costs, as well as the strong public policy against double-dipping, and reflected a conclusion that certifying Justices who also would be collecting their pensions would detrimentally impact the workings of the court system. (id. at 379-383). Here, the Board's determination was based solely on budgetary considerations and not on any nonmonetary public policy and, therefore, it was not rationally related to the necessity element because the denials were purely mechanical — i.e., a process that could not be used as a functional alternative to "inscrutable applicant-by-applicant determinations" (id. at 383).
Additional considerations also support our conclusion [*9]that the Board's stated reason for denying certification is not rationally related to the necessity prong. As the Court of Appeals acknowledged in Loehr, there is a virtually omnipresent need for the services of additional Justices which, by itself, is not always a reason to certify a retired Justice, because such a conclusion would effectively strip the Board of its discretion to decide, on an individual basis, whether to grant certification (id. at 382). This same rationale holds true here because, inasmuch as there is seemingly always a need for another Justice to expedite the business of the courts, there would also always be an extra cost involved in certifying a Justice. Loehradvises, however, that a determination premised solely on what is always trueis nothing more than a mechanical inquiry that does not involve an exercise of discretion; rather, it results in decisions that could be made by "functionaries responsible for the court's docket or budget" (id. at 382), not ones entrusted to the discretion of a "high level certifying authority endowed with peculiar experience and expertise" (id. [internal quotation marks and citations omitted]). Unlike the Board's proffered reason here, the policy in Loehr specifically noted that the Board had taken into account the applicants' "potential future contributions as certified Justices," and that "the net effect" of certifying them included more than the "narrow matter of annual pay" — demonstrating more than a merely mechanical cost-based approach (id. at 382).
We also disagree with the majority to the extent that it concludes that the Board engaged in the requisite "individualized assessment" in deciding not to certify 46 of the 49 applications because it properly weighed that determination against the disruption that would allegedly occur if the Judiciary laid off more than 300 nonjudicial employees over the course of two fiscal years. In our view, this is unavailing because "[a]chieving the proper balance" — in the parlance of the majority — was not the reason stated in the Board's minutes for its determination. Further, that rationale does not establish, much like the budget-focused reason actually contained in the minutes, that the Board conducted an individualized analysis of the necessity of each applicant's services. To the extent that respondents argue that the Board did engage in an individualized review of each applicant when it denied certification based on statements contained in a December 28, 2020 affidavit submitted by the Chief Administrative Judge, we conclude that Supreme Court did not abuse its discretion in declining to consider that document. That affidavit contained new facts and was belatedly created after the matter was fully submitted and the record certified on December 16, 2020 (seeCPLR 2214 [c]; Matter of Save the Pine Bush v Common Council of City of Albany, 188 AD2d 969, 972 [1992]). In any event, the claim in the affidavit that the Board engaged in an individualized [*10]review process was plainly contrary to the position that respondents previously and consistently asserted up until that time in this litigation — i.e., that the Board's plenary and unfettered power established as a matter of law that "severe budgetary constraints" alone could support the validity of the Board's determination not to grant certification.
In reaching our conclusion, we are solicitous of the difficult decisions that face the Judiciary and the Board in navigating the devastating effects of the coronavirus pandemic, many of which are sure to continue even after all the masks are put away and the vaccines are fully distributed. Nonetheless, despite the very real exigencies of our current situation, we simply cannot allow the Board to elide the specific process outlined by the NY Constitution and Judiciary Law § 115 in considering certification applications. Indeed, the Supreme Court of the United States recently observed, albeit in a slightly different context, that "even in a pandemic, the Constitution cannot be put away and forgotten" (Roman Catholic Diocese of Brooklyn v Cuomo, ___ US ___, ___, 141 S Ct 63, 68 [2020]). Thus, we find that Supreme Court properly granted the petition to the extent of annulling the determination because the reason provided by respondents simply failed to show that the Board actually engaged in the individualized necessity determination required by law (see Matter of Loehr v Administrative Bd. of the Cts. of the State of N.Y., 29 NY3d at 382). For the same reasons, we also conclude that petitioners' first cause of action, raising a claim that the determination was made in violation of lawful procedure under CPLR 7803 (3), also has merit, and provides an independent basis to annul the determination.[FN6]
Smith, J., concurs.
ORDERED that the appeal from the December 11, 2020 order is dismissed, without costs.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as partially granted the petition and annulled the determination of respondent Administrative Board of the New York State Unified Court System; petition dismissed to that extent and it is declared that petitioners have not established a violation of NY Constitution, article VI, §§ 4 (e) and 25 (b), Judiciary Law § 115 or Executive Law article 15; and, as so modified, affirmed.



Footnotes

Footnote *: Pursuant to NY Constitution, article VI, § 4 (h), Associate Justices Nancy E. Smith and John M. Curran of the Appellate Division, Fourth Judicial Department were designated to temporarily serve as Associate Justices of the Appellate Division, Third Judicial Department for the purpose of hearing and deciding this matter.

Footnote 1:Petitioners Ellen Gesmer and David Friedman served on the Appellate Division, First Judicial Department, and petitioners Sheri S. Roman and John M. Leventhal served on the Appellate Division, Second Judicial Department.

Footnote 2: In its decision, Supreme Court commented that the December 16, 2020 affidavit from the Chief Administrative Judge filed with respondents' answer was "not part of the certified record" and that the only relevant record consisted of the Board minutes. Where, as here, there was no administrative hearing, respondents were entitled to submit the Chief Administrative Judge's affidavit — which was based on firsthand knowledge — to explain the information before the Board and the rationale for its decision (see Matter of Weissenburger v Annucci, 155 AD3d 1150, 1152 [2017]; Matter of Entergy Nuclear Indian Point 2, LLC v New York State Dept. of State, 130 AD3d 1190, 1193 n 5 [2015]; Matter of Brown v Sawyer, 85 AD3d 1614, 1616 [2011]). The December 16, 2020 affidavit is therefore properly before us.

Footnote 3: Contrary to petitioners' contention, the submissions that were related to the injunction motion — including the December 28, 2020 affidavit of the Chief Administrative Judge — were properly before Supreme Court and should have been considered. In that affidavit, the Chief Administrative Judge again explained the budgetary and operational concerns underlying the Board's determination and added the point that information packets specific to each applicant, organized in binders, were circulated to and reviewed by the Board prior to its vote. That said, although the December 28, 2020 affidavit is properly included in the record on appeal, our determination remains the same even without considering it.

Footnote 4: Respondents' appeal from the December 11, 2020 order must be dismissed as the right of direct appeal from an intermediate order extinguishes upon entry of the final judgment (see Matter of Aho, 39 NY2d 241, 248 [1976]; Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d 1437, 1439 n 1 [2020]; Retta v 160 Water St. Assoc., L.P., 94 AD3d 623, 624 [2012]). To the extent that the issues raised on the appeal from the December 11, 2020 order necessarily affect the final judgment and are brought up for review therefrom (see CPLR 5501 [a] [1]), we find respondents' arguments to be either unavailing, waived or academic in light of our determination.

Footnote 5: Inasmuch as petitioners only challenge Supreme Court's dismissal of the first, fifth and sixth causes of action, they have abandoned any challenge to the court's dismissal of the remaining causes of action asserted in the petition/complaint (see Matter of Pine v Annucci, 155 AD3d 1201, 1202 [2017], lv denied 31 NY3d 905 [2018]; Barski v Town of Aurelius, 147 AD3d 1483, 1484 [2017]; State of N.Y. Workers' Compensation Bd. v Wang, 147 AD3d 104, 110 n 5 [2017]).

Footnote 6: We agree with the majority's conclusion that petitioners' remaining causes of action are without merit or abandoned on appeal. We also agree with their conclusion that respondents' contentions with respect to the December 11, 2020 order are without merit, waived or academic considering the foregoing determination.