Matter of Streety v Annucci (2022 NY Slip Op 02170)





Matter of Streety v Annucci


2022 NY Slip Op 02170


Decided on March 31, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 31, 2022

532241
[*1]In the Matter of Charles Streety, Appellant,
v
Anthony J. Annucci, as Acting Commissioner of Corrections and Community Supervision, Respondent.

Calendar Date:February 8, 2022

Before:Garry, P.J., Egan Jr., Pritzker, Colangelo and Ceresia, JJ.

The Legal Aid Society, New York City (Robert C. Newman of counsel), for appellant.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for respondent.



Egan Jr., J.
Appeals (1) from a judgment of the Supreme Court (DeBow, J.), entered September 2, 2020 in Albany County, which, among other things, dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of the Department of Corrections and Community Supervision denying petitioner's request for a certificate of good conduct, and (2) from an order of said court, entered October 5, 2020 in Albany County, which, upon reargument, adhered to its prior decision dismissing the petition.
Petitioner was convicted of sexual abuse in the first degree in 1988 and was sentenced to a prison term of 1 to 3 years. He was permanently disqualified from driving a school bus as a result of that conviction, but could apply to the Commissioner of Motor Vehicles for a waiver of that disqualification if five years had passed "since [he] was discharged or released from [his] sentence of imprisonment . . . [and he had] been granted a certificate of relief from disabilities or a certificate of good conduct [hereinafter CGC] pursuant to" Correction Law article 23 (Vehicle and Traffic Law § 509-cc [2] [a]; see Vehicle and Traffic Law § 509-cc [4] [a]). Petitioner obtained a commercial driver's license and worked as a truck driver in the years after his release from prison, then became interested in driving a van for individuals with disabilities that fell within the definition of a school bus (see Vehicle and Traffic Law § 509-a [1]). As a prelude to seeking a waiver permitting him to perform that work, petitioner applied to the Department of Corrections and Community Supervision (hereinafter DOCCS) for a CGC in 2018 (see Correction Law §§ 703-a [1]; 703-b). Parole officers working in one of DOCCS's Manhattan area offices conducted a field investigation and issued a report relating petitioner's "forthcoming and cooperative" account as to how his sexual abuse in the first degree conviction arose out of a drug-related confrontation with the victim over her stealing from him. Petitioner stated that he had been drug free for five years and was continuing to engage with a substance abuse support group at the time of the investigation, however, and investigators described how he had secured full-time employment, established a "[w]ell kept" residence, and provided personal references who "offered many complimentary and supportive comments" regarding both his dependability and his considerate and caring nature. As such, the report found petitioner to be a "worthy candidate" for a CGC and recommended that one be granted so that he could pursue the possibility of working as a school bus driver. DOCCS, acting through its Assistant Commissioner for Community Supervision, denied the application for a CGC and found that the relief requested was inconsistent with the public interest.
Petitioner commenced this CPLR article 78 proceeding challenging DOCCS's determination. Respondent's pre-answer motion for various relief resulted in an order that[*2], among other things, changed venue of the proceeding from New York County to Albany County. Following joinder of issue, Supreme Court issued a judgment in which it, as is relevant here, dismissed the petition. Upon petitioner's motion to reargue, the court issued an order in which it granted reargument and, upon reargument, adhered to its prior decision. Petitioner appeals from the judgment and the order.
To begin, "[o]ur review of an agency's determination in matters such as this 'is limited to ascertaining whether it was arbitrary and capricious or an abuse of discretion'" (Matter of Weissenburger v Annucci, 155 AD3d 1150, 1151 [2017], quoting Matter of Cohen v New York State Workers' Compensation Bd., 122 AD3d 1222, 1223 [2014]), with a determination being "arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; accord Matter of Adirondack Wild: Friends of the Forest Preserve v New York State Adirondack Park Agency, 34 NY3d 184, 195 [2019]). Further, "[j]udicial review of an administrative determination is limited to the grounds invoked by the agency and a reviewing court which finds those grounds insufficient or improper may not sustain the determination by substituting what it deems to be a more appropriate or proper basis" (Matter of Parkmed Assoc. v New York State Tax Commn., 60 NY2d 935, 936 [1983]; see Matter of People v Schofield, 199 AD3d 5, 11 [2021]). In assessing those grounds, however, we may consider the affidavit provided by the Assistant Commissioner explaining the rationale for the determination, "as there was no administrative hearing and [the affidavit] was based on firsthand knowledge of the decision-making process regarding petitioner's application" (Matter of Weissenburger v Annucci, 155 AD3d at 1152; see Matter of Gesmer v Administrative Bd. of the N.Y. State Unified Ct. Sys., 194 AD3d 180, 184 n 2 [2021], appeal dismissed 37 NY3d 1103 [2021]). Petitioner argues that DOCCS's determination was arbitrary and capricious in that it failed to consider the factors set forth in Correction Law § 753 and, moreover, that its denial of his application as inconsistent with the public interest is not supported by a rational basis in the record.
With regard to the first argument, Correction Law § 753 is found in Correction Law article 23-A, while applications for a CGC are governed by Correction Law article 23. It is true that Correction Law articles 23 and 23-A in their present form emerged from the same 1976 legislation intended to address the challenges prior criminal offenders faced in finding employment (see L 1976, ch 931) and, "[w]hen the terms of related statutes are involved, . . . they must be analyzed in context and in a manner that 'harmonize[s] the related provisions . . . [and] renders them compatible'" (Matter of M.B., 6 NY3d 437, 447 [2006], quoting Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town [*3]of Huntington, 97 NY2d 86, 91 [2001]; see Alweis v Evans, 69 NY2d 199, 204-205 [1987]). That said, Correction Law article 23-A is aimed at "eliminat[ing] bias against ex-offenders in obtaining employment or a license" (Matter of Baman v State of New York, 85 AD3d 1400, 1401-1402 [2011]; see Correction Law §§ 751, 752; Griffin v Sirva, Inc., 29 NY3d 174, 182 [2017]). Correction Law article 23, in contrast, serves the separate function of allowing a prior offender to seek relief from a legal "disability, or . . . bar to his [or her] employment, automatically imposed by law by reason of his [or her] conviction," that would prevent him or her from holding a particular job or license to begin with (Correction Law § 703-a [1]).
The provisions of Correction Law article 23-A distinguish a prior offender's application for a job or license, to which the article applies, from his or her preliminary application to be relieved from a legal bar to obtaining the job or license. For instance, Correction Law § 751 states that the article "appl[ies] to any application by any person for a license or employment at any public or private employer, who has previously been convicted of one or more criminal offenses in this state
. . . except where a mandatory forfeiture, disability or bar to employment is imposed by law, and has not been removed" by, among other things, a CGC (see also Correction Law § 750 [4], [5]). Correction Law § 753, in turn, sets forth factors that are used "[i]n making a determination pursuant to [Correction Law § 752 (1)]" (Correction Law § 753 [1], [2]), which "sets out a broad general rule that employers and public agencies cannot deny employment or a license to an applicant solely based on status as an ex-offender" absent a finding that certain exceptions apply and, as such, presumes that there is no legal bar to the applicant holding the employment or license (Matter of Bonacorsa v Van Lindt, 71 NY2d 605, 611 [1988]; see Correction Law § 752 [1], [2]; Griffin v Sirva, Inc., 29 NY3d at 182-183). Correction Law § 753 (2) further requires that "the public agency or private employer shall . . . give consideration to a [CGC] issued to the applicant" in making that assessment, which would be a pointless requirement in assessing an application for the CGC itself. As such, construing the statutory provisions in their entirety and affording the statutory language its plain meaning (see People ex rel. McCurdy v Warden, Westchester County Corr. Facility, 36 NY3d 251, 257 [2020]), the factors set forth in Correction Law § 753 were not applicable to DOCCS's assessment as to whether petitioner should be granted a CGC under Correction Law article 23 (see Matter of Brown v Berry, 151 AD2d 882, 883 [1989], appeal dismissed 74 NY2d 944 [1989]).
Turning to the basis for DOCCS's determination, Correction Law § 703-b (1) authorizes DOCCS to grant a CGC to a person previously convicted of a crime in New York where it is shown that: "(a) [t]he applicant has [*4]conducted himself or herself in a manner warranting such issuance for [three years after the conclusion of his or her sentence]; (b) [t]he relief to be granted by the certificate is consistent with the rehabilitation of the applicant; and (c) [t]he relief to be granted is consistent with the public interest."[FN1] DOCCS made no findings with regard to the first two factors and, as such, the only question before us is whether DOCCS rationally determined that it was inconsistent with the public interest to grant petitioner a CGC permitting him to pursue a waiver of the statutory bar against him working as a school bus driver.
In answering that question, it is necessary to consider the interplay between the factors set forth by Correction Law § 703-b (1) and, in particular, what renders a requested CGC "consistent with the public interest" (Correction Law § 703-b [1] [c]). As noted above, Correction Law articles 23 and 23-A were enacted in their present form to address impediments to obtaining employment and licenses by, and legal restrictions imposed on, prior offenders, recognizing that "[u]nemployment is the greatest deterrence to rehabilitation as statistics indicate that many . . . ex-offenders return to lives of crime because other employment is not available" (Mem in Support, Bill Jacket, L 1976, ch 931). In furtherance of that objective, the statutory provisions create procedures to combat impediments against former offenders with regard to both licensure and employment and to establish reasonable standards for issuing CGCs to those "former offenders who have demonstrated their ability to lead a productive and law-abiding life" (Governor's Mem approving L 1976, ch 931, 1976 McKinney's Session Laws of NY at 2458, 2459; see Able Cycle Engines v Allstate Ins. Co., 84 AD2d 140, 144 [1981], lv denied 57 NY2d 607 [1982]). The key issues in any request for a CGC are therefore whether the former offender has demonstrated good behavior after the conclusion of his or her sentence and whether his or her rehabilitation would be assisted by a CGC, a focus reflected in the statutory requirement that DOCCS consider those issues in assessing a requested CGC (see Correction Law § 703-b [1] [a], [b]) and the "presumption of rehabilitation in regard to the offense or offenses specified" that arises if a CGC is granted (Correction Law § 753 [2]).
The further requirement that a requested CGC be consistent with the public interest constituted an attempt to balance the broad rehabilitative goals of the statutory scheme, reflected in Correction Law § 703-b (1) (a) and (b), against the real possibility that the circumstances of an individual case would raise "legitimate concerns . . . for protection of life and property" if statutory restrictions resulting from a criminal conviction were lifted (Mem in Support, Bill Jacket, L 1976, ch 931). The statute gives "no specific guidance as to how a decision maker should balance" those factors (Joy Radice, Administering [*5]Justice: Removing Statutory Barriers to Reentry, 83 U Colo L Rev 715, 758-759 [2012]). It is nevertheless evident that a balance must be made, and that relying upon the bare fact of an applicant's conviction as grounds for denial would allow DOCCS to deny any application for a CGC without considering the rehabilitative goals that Correction Law § 703-b (1) (a) and (b) requires it to consider. DOCCS must therefore articulate some factual basis beyond the conviction itself, including but not limited to the factual circumstances of the conviction, the applicant's institutional record while incarcerated or performance under parole or postrelease supervision, or some other reason in the applicant's history, to determine that a requested CGC is inconsistent with the public interest (see e.g. Matter of Weissenburger v Annucci, 155 AD3d at 1152; People v K.B., 65 Misc 3d 746, 753 [Crim Ct, Kings County 2019]).
With that in mind, the challenged determination is a form letter with blanks to be filled in, and the Assistant Commissioner made no effort to explain his reasoning beyond checking a box next to a sentence stating that petitioner's application was being denied because "[t]he relief to be granted by the [CGC] is inconsistent with public interest." There is no question that such a "cursory letter decision," which mentions only one of the statutory factors set forth in Correction Law § 703-b and offers no discussion of the "grounds for the denial[,] precludes meaningful review of the rationality of the decision" (Matter of Figel v Dwyer, 75 AD3d 802, 804 [2010]; see Matter of People v Schofield, 199 AD3d at 12-13; Matter of Office Bldg. Assoc., LLC v Empire Zone Designation Bd., 95 AD3d 1402, 1405 [2012]).
The affidavit of the Assistant Commissioner attempts to remedy that problem after the fact by describing his review of the application, but falls far short of doing so. Indeed, the Assistant Commissioner's reasoning relies entirely upon the fact of petitioner's sexual abuse in the first degree conviction, concluding that a conviction for a violent felony rendered petitioner's operation of "a school bus transporting children was contrary to the welfare and safety of the public" despite "the length of time since [his] criminal conviction and his social or employment status in the community." As noted above, Correction Law article 23 requires more than a naked reliance on the crime of conviction, and the Assistant Commissioner's affidavit therefore reflects that DOCCS "failed to comply with the statute and acted in an arbitrary manner" (Matter of Acosta v New York City Dept. of Educ., 16 NY3d 309, 319 [2011]). Although the record contains other information regarding the circumstances of petitioner's conviction and his subsequent history that might render the denial of his application rational, a "court is powerless to sanction the determination by substituting what it deems a more appropriate or proper basis" (Matter of Trump-Equitable Fifth Ave[*6]. Co. v Gliedman, 57 NY2d 588, 593 [1982]; accord Matter of Figel v Dwyer, 75 AD3d at 804-805). Thus, the determination must be annulled and the matter remitted for DOCCS to reconsider petitioner's application (see e.g. Matter of Menon v New York State Dept. of Health, 140 AD3d 1428, 1432 [2016]; Matter of Figel v Dwyer, 75 AD3d at 804-805; cf. Matter of Weissenburger v Annucci, 155 AD3d at 1152).
Finally, any issue regarding the order of Supreme Court granting petitioner's motion to reargue and, upon reargument, adhering to its original determination, has been rendered academic by the foregoing (see Matter of De Russo v City of Albany Bd. of Zoning Appeals, 147 AD2d 836, 837-838 [1989]).
Garry, P.J., Pritzker, Colangelo and Ceresia, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed the petition; petition granted, determination annulled and matter remitted to the Department of Corrections and Community Supervision for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.
ORDERED that the appeal from the order is dismissed, as academic, without costs.



Footnotes

Footnote 1: The statute imposes a sliding scale for the requisite period of good behavior that depends upon the severity of the offense. As petitioner was convicted of sexual abuse in the first degree, a class D felony (see Penal Law § 130.65), the minimum period of good behavior required was three years following the 1991 expiration date of his sentence (see Correction Law § 703-b [3]).