Fernandez v New York State Bd. of Elections (2024 NY Slip Op 51064(U))

[*1]

Fernandez v New York State Bd. of Elections

2024 NY Slip Op 51064(U)

Decided on August 13, 2024

Supreme Court, Albany County

Weinstein, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 13, 2024
Supreme Court, Albany County

Victoria Fernandez and KATHERINE HAUSER, Petitioners,

against
New York State Board of Elections; PETER S. KOSINSKI, in his capacity as Republican Co-Chair of the New York State Board of Elections; HENRY T. BERGER, in his capacity as Democratic Co-Chair of the New York State Board of Elections; ANTHONY J. CASALE, in his capacity as Republican Commissioner of the New York State Board of Elections; and ESSMA BAGNUOLA, in her capacity as Democratic Commissioner of the New York State Board of Elections, Respondents.

Index No. 907584-24

David A. Weinstein, J.

By petition filed August 2, 2024, petitioners Victoria Fernandez and Katherine Hauser, voters registered in the State of New York, challenge the language promulgated by the New York State Board of Elections (the "BOE" or "Board") for the form and abstract to be presented with Proposal Number One, known colloquially as the Equal Rights Amendment ("ERA"), on the ballot in the election this November. Among other things, petitioners argue that the BOE's proposed language violates Election Law § 4-108, which requires that certain explanatory materials be prepared by the Board to accompany a ballot question, and sets forth various criteria regarding the nature of the language to be used in such.
By motion filed on August 9, 2024, movant Gerard Kassar seeks to intervene in this proceeding in his capacity as Chairman of the Conservative Party of New York State ("CPNYS" or "Conservative Party"), and in his capacity as an individual voter. The motion is opposed by petitioners Victoria Fernandez and Katherine Hauser, as well as by the Democratic BOE Commissioners, respondents Henry T. Berger and Essma Bagnuola.[FN1]
The Republican BOE [*2]Commissioners have taken no position on the motion.
The Notice of Motion presented by Kassar states that the purpose of his intervention is to "protect[]" the proposed intervenor's "interest in ballot integrity, organization, form, and content of the ballot, and application of Election [Law] § 4-108 which will affect candidates of the Conservative Party." Such intervention is sought both as a matter of right and permissively, pursuant to CPLR 1012 and 1013 (Attorney Affirmation in Support ¶ 3).[FN2]

In an affidavit by Mr. Kassar, he asserts that the language changes to the abstract for Proposal One proposed in the petition "will have a direct impact on Conservative Party candidates and operations" (Kassar Affidavit ¶ 7). Specifically, he notes that the Party takes positions on various ballot questions, and says that the interpretation of new language added to section 4-108 in 2023 (the so-called "plain language law") — whose application will be addressed in this case as a matter of first impression — will "create precedent binding all future determinations" of this statute (id. ¶ 8). Further, he contends that the "content and phrasing of these referendums often drives voter turnout," and thus it is "critical that the ballot referendum language accurately reflect the language of the proposed legislation . . ." (id. ¶ 9). He avers that his interest is to ensure that section 4-108 "be implemented properly and correctly to maintain integrity of the election ballot" and to "avoid undue interference from outside parties" (id. ¶ 10).
In regard to the specific issues in this proceeding, Kassar states his view that the proposed language challenged by petitioners "accurately reflects the language that passed the Legislature while avoiding buzzwords designed to improperly sway the electorate" (id. ¶ 11). He also avers that "[m]any entities," including the CPNYS, have begun "education efforts" on the proposed ERA, and a change in the wording now will sow confusion among voters, lead to wasted efforts and require a change in approach to the issue (id. ¶¶ 12-13). He acknowledges, however, that "[t]he substantial interests of the Conservative Party in this litigation do not lie in opposition to the impact of the ballot question, but rather the possible pernicious effects of misinterpreting Election Law §4-108, the ballot language's effect on other races on the ballot, and the overall integrity of the ballot to be certified in a manner that is efficient and apolitical" (id. ¶ 15).
In their opposition submission, petitioners argue primarily that allowing the proposed intervention might "complicate and slow" the resolution of this case, while speed is paramount given the proximity of the election (Petitioners' Affirmation in Opposition ¶ 5). Further, petitioners question whether a Party Chair is the appropriate individual to advance what Kassar claims to be an interest in using "politically neutral" language for ballot questions, and argue that any such interest is already advanced by the BOE members named as respondents (id. ¶ 6). For their part, the Democratic Commissioners contend that the position advanced by the proposed intervenor is duplicative of that set forth in the submissions of the Republican Commissioners, and maintain that movant has no independent interest in these proceedings (see Democratic Commissioners' Affirmation in Opposition ¶¶ 5-6).
Discussion
The CPLR permits intervention under two tests: as of right, or permissively.[FN3]

Intervention as of right is to be allowed, upon a "timely" motion, when one of three factors are present: (1) a statute "confers an absolute right to intervene"; (2) "representation of the person's interest by the parties is or may be inadequate and the person is or may be bound by the judgment"; or (3) the action "involves the disposition or distribution of, or the title or a claim for damages for injury to, property and the person may be affected adversely by the judgment" (CPLR 1012[a]).
Movant's claim to intervene as a right is premised on the second of these tests, which requires that the intervenor show an interest in the case that is "direct and substantial" (see Borst v International Paper Co., 121 AD3d 1343, 1346 [3d Dept 2014] [internal quotation marks and citation omitted]). In an effort to meet this standard, movant points to its interest in "ensuring that Election Law §4-108 does not become a tool for individuals to insert political buzzwords into ballot language to affect perception of ballot referendums and election turnout," thereby "preserv[ing] the bi-partisan compromise approach that the Board of Elections supplies when it certifies ballot language pursuant to El. Law §4-108" (CPNYS Memorandum of Law ["CPNYS Mem"] 4-5).
It is unclear from its submission why movant's interest in this regard is any different from that of any other New York State resident. A political chair has no greater interest than anyone else in ensuring that constitutional amendments are presented to the public in a fair context. Further, Kassar does not even attempt to show that his interest in the proceeding will not be met by the Republican members of the Board of Elections, who argue for the same outcome.[FN4]
For [*3]these reasons, he as not demonstrated that the representation of his interest by other parties is inadequate, and thus intervention as of right is unavailable.
Movant also contends that he will be "bound by the judgment," in that it will provide for "the form and content of the ballot on which Conservative Party candidates will appear, thereby affecting their electoral chances and more broadly how they conduct their campaigns," "influenc[ing] turnout" and "impact[ing] the Conservative Party Statewide" (CPNYS Mem 5). Movant does not provide any specifics as to the connection between the language used in the ballot question abstract and these other alleged effects. Nor does he explain why, if these consequences will occur, the effect of a ruling on the electoral prospects of a particular party are relevant to the determination of the form in which Proposal Number One appears on the ballot or whether it complies with the governing statute.
In any event, that there might be such indirect and contingent consequences for the proposed intervenor does not equate to it being "bound" by the judgment. As noted above, movant admits that his interest here lies not in the ballot question itself, but in the proper interpretation of section 14-108, the impact of the ballot question on other races, and "the overall integrity of the ballot to be certified in a manner that is efficient and apolitical" (Kassar Affidavit ¶ 15). Or as it says elsewhere, it "seeks to answer the common question of law and fact as to whether Respondent-Board correctly applied the new 'plain language' requirements Election Law §4-108" (CPNYS Mem 6). But the fact that a party may have a view on and interest in the general resolution of the broad questions at issue in a proceeding does not mean it is "bound" by the outcome of that proceeding in any legal sense. As I have said elsewhere, "[t]he fact that a final judgment may resolve an issue in a way that could impact . . . a person that is not participating in the suit is true of every litigation; it does not create a right to intervene" (see Matter of North Shore Ambulance & Oxygen Servs., Inc. v. New York State Emergency Med. Servs. Council, 69 Misc 3d 1223[A], 2020 NY Slip Op 51471[U] *8 [Sup Ct, Albany County May 15, 2020]).
As to permissive intervention, it is allowed "when a statute of the state confers a right to intervene in the discretion of the court, or when the person's claim or defense and the main action have a common question of law or fact." In determining how to exercise its discretion, the court "shall consider whether the intervention will unduly delay the determination of the action or prejudice the substantial rights of any party" (CPLR 1013).
Movant argues that there is a common question of law at issue in its defense of the present language of the abstract and that of the Republican Commissioners: "whether Respondent-Board correctly applied the new 'plain language' requirements [of] Election Law §4-108" (CPNYS Mem 6). Assuming that movant's views about the interpretation of this statute constitute a "common question of law or fact" with the underlying proceeding, the determination of whether to allow a party to intervene remains a matter for the Court's discretion. The exercise [*4]of that discretion entails the balancing of "the benefit to be gained by intervention, and the extent to which the proposed intervenor may be harmed if it is refused, against other factors, such as the degree to which the proposed intervention will delay and unduly complicate the litigation," as well as whether any party would be prejudiced (see Matter of People v Schofield, 199 AD3d 5, 9 [3d Dept 2021], quoting Matter of Pier v Board of Assessment Review of Town of Niskayuna, 209 AD2d 788, 789 [3d Dept 1994]).
Considering these factors, I find the balance tips against intervention. True, the fear of delay articulated by petitioners is somewhat overstated, since Kassar has submitted a proposed answer; does not seek to make any additional filings; and does not seek an adjournment (see Schofield, 199 AD3d at 10-11 [finding little danger of delay given similar considerations]). By the same token, however, I see little benefit to the intervention, as the issues raised in movant's papers are encompassed within the submissions of the Republican Commissioners as well. Indeed, nothing is contained in those papers which fleshes out any of the arguments about the specific ballot proposal at issue except in the most general terms. To the contrary, as noted supra pp 2-3, petitioner specifically denies that its interest "lie[s] on opposition to the impact of the ballot question, but rather the possible pernicious effects of misinterpreting Election Law §4-108, the ballot language's effect on other races on the ballot, and the overall integrity of the ballot to be certified in a manner that is efficient and apolitical." In short, the proposed intervenor acknowledges that its focus in this case is on the same legal issues briefed by other parties, and on extraneous matters (such as the effect of the ballot proposal on other races) that have nothing to do with this proceeding, and would add unnecessary — if relatively limited — complications to the case. Under these circumstances, I find in the exercise of my discretion that intervention is unwarranted.
Accordingly, the motion by Gerald Kassar to intervene in this proceeding is DENIED.
This constitutes the Decision and Order of the Court. The original Decision and Order is being electronically filed. The signing of this Decision and Order, and e-filing with the County Clerk shall not constitute notice of entry and Counsel is not relieved from the applicable provisions of the CPLR respecting to filing and service of notice of entry.
ENTER.
Dated: August 13, 2024
Albany, New York
David A. Weinstein
Acting Supreme Court Justice
Papers Considered:
1. Notice of Motion to Intervene as Respondents dated August 9, 2024, with Affirmation of James P. Curran, Esq. Dated August 9, 2024, Affidavit of Gerard Kassar dated August 9, 2024, proposed Answer in Special Proceeding and appended Exhibits.
2. Memorandum of Law in Support of Motion to Intervene as Respondents dated August 9, 2024.
2. Affirmation of Brian L. Quail, Esq. Opposing Intervention dated August 12, 2024.
3. Affirmation of Renee Zaytsev, Esq. In Opposition to Motion to Intervene dated August [*5]12, 2024.

Footnotes

Footnote 1:In their filings in response to the petition, the Co-Chair and Commissioner of the Board affiliated with the Democratic Party, and those affiliated with the Republican Party, have taken contrary positions and made separate submissions, with only the former opposing the intervention motion.

Footnote 2:The Affirmation in support refers to section 1013 twice, but that is clearly a typo.

Footnote 3:Petitioners argue that the appropriate standard for intervention is different in a special proceeding than in other actions, and is provided by CPLR 401 rather than CPLR 1012 or 1013 (see Petitioner's Affirmation in Opposition ¶ 4). CPLR 401, however, states that intervention may be allowed by "leave of court," and courts still cite the CPLR's specific intervention provisions in deciding whether to grant such motion (see e.g. Amedure v State, 210 AD3d 1134, 1136 [3d Dept 2022]). There is some caselaw that indicates that because leave of the Court is required for intervention in a special proceeding, all intervention is discretionary and thus intervention as of right does not exist in these circumstances (see Matter of Bank [B.L.], 72 Misc 3d 619, 623 [Sup Ct, NY County 2021]). Since I find below that movant has failed to show that it may intervene as of right in any event, I need not decide whether this is a correct reading of the law.

Footnote 4:Movant acknowledges that "[t]his element also requires a finding that [its] interests are not
adequately represented by existing parties," and then asserts that "[t]he Legislature, in part, has already determined that party chairmen have substantial interests that are unique to Election Law § 16-104 proceedings by statutorily prescribing them standing in subdivision 1 of this section" (CPNYS Mem 4). But that is a non-sequitur. To the extent that a statutory grant of standing reflects a determination by the Legislature that the individual at issue has an interest in the proceeding, it says nothing about whether other parties can adequately represent that interest in a particular case. In any event, as noted by the Democratic Commissioners, party chairs are granted standing by this statute in contests regarding "[t]he form and content of any ballot, or portion thereof, to be used in an election, and the right to use any emblem design, party or independent body name" (Election Law § 16-104[1]), while all eligible voters have standing to challenge "[t]he wording of the abstract or form of submission of any proposed amendment, proposition or question" (id. § 16-104[2]). In short, as to the issue in this case, Kassar's recognized interest is no different from that of any other voter.